OSCAR STRAND, ADMINISTRATOR, APPELLANT, V. BANKERS LIFE INSURANCE COMPANY, APPELLEE.

FILED MARCH 25, 1927.   No. 24636.

1. Insurance: EXACTION OF PREMIUM IN ADVANCE: DUTY OF INSURER. A life insurance company that exacts in advance a premium from an applicant without assuming any obligation for insurance prior to the issuance and delivery of a policy is his trustee for the return of the premium if the application is rejected and for its unconditional acceptance if the application is approved and the policy delivered.

2. ———: ———: ACTION ON APPLICATION. It is the duty of a life insurance company that exacts in advance a premium from an applicant without assuming any obligation for insurance prior to the issuance and delivery of a policy to act on the application within a reasonable time.

3. ———. The business of a life insurance company operating under a charter from the state is affected with a public interest.

4. ———: ACTION ON APPLICATION: LIABILITY FOR DELAY. A life insurance company that exacts a premium in advance from an applicant without assuming any obligation for insurance prior to the issuance and delivery of a policy is liable in tort for failure to perform the duty to act on the application within a reasonable time, where the negligence is the proximate cause of damages.

5. ———: ———: EXCUSABLE DELAY. A life insurance company that did not act on an application for two weeks, while in good faith seeking from the medical examiner an omitted answer to a material question in his medical report, *held* not chargeable with actionable negligence for the delay, where the applicant in his application represented the medical report "to be full, complete and true."

6. ———: ———: Delay Not Chargeable to Insurer. A delay of two weeks by a medical examiner in reporting to a life insurance company a material answer omitted⋅ from his report of the medical examination, where there was no delay on his part in transmitting the report itself when prepared, *held* not chargeable to the insurance company under the facts stated in the opinion.

Appeal from the district court for Polk county: George F. Corcoran, Judge. *Affirmed.*

*Elmer E. Ross,* for appellant.

*Peterson & Devoe, contra.*

Heard before Goss, C. J., Rose, Good, Thompson and Eberly, JJ.

Rose, J.

This is an action against a life insurance company to recover $1,000 in damages for negligence in preparing, examining and approving an application for life insurance in the sum of $1,000, after receiving an annual premium, and in failing to issue and deliver a policy. Melvin A. Strand of Shelby, Nebraska, was the applicant. He died without procuring the insurance. As administrator of his estate, his father, Oscar Strand, is plaintiff. The Bankers Life Insurance Company is defendant. Its home office is in Lincoln, Nebraska. In an answer, defendant demurred to the petition, pleaded a return of the premium and denied the negligence charged by plaintiff. A trial of the issues resulted in a peremptory instruction in favor of defendant. Upon the jury's verdict thus directed the action was dismissed. Plaintiff has appealed.

Did the trial court err in directing a verdict against plaintiff? In a blank form furnished by defendant, Melvin A. Strand applied for a 20-payment life insurance policy for $1,000, naming his father, Oscar Strand, as beneficiary. The application was procured by W. L. Mosgrove, soliciting agent, and was written by A. I. Scott, agent at Shelby. The medical examination of applicant, after a delay on his part,

Strand v. Bankers Life Ins. Co.

was conducted by Dr. L. Myers, examining physician at that place. It was the duty of Myers to ask questions as they appeared in a printed form drafted by defendant and to insert therein the answers of the applicant. An answer to one of the questions, however, was never inserted in the medical report. That question was: "Have you ever had inflammatory rheumatism?" The applicant signed both the application for insurance and the report of the medical examination, and they were forwarded to and received at the home office of defendant without delay. The first annual premium was $29.02 and it was promptly paid to and accepted conditionally by Mosgrove, who issued and delivered a receipt of which the following is a copy:

"Conditional Receipt.

"Received at Shelby, State of Nebr., this 23d day of Nov. 1923, of Melvin A. Strand the sum of twenty-nine and 2/100 dollars, in payment of premium upon $1,000 policy which he has this day applied for to the Old Line Bankers Life Insurance Company, of Lincoln, Nebraska.

"The applicant agrees to submit to such medical examination as the company may require by an examiner approved by the company. Upon such examination, if application is approved, policy shall issue. If disapproved, said payment is to be returned to the applicant. It is expressly agreed that a refusal by the applicant to submit to a medical examination shall forfeit the payment herein to the company. Policy to date at issue unless the insurance age has changed, in which event it shall date back within the age limit for which premium is paid. It is understood and agreed that all the premiums are due in advance and payable in cash; therefore, when notes are taken by the agent as an accommodation to the party insured, any refusal afterwards to accept the policy, or any tender of said policy back to the company or to an agent, will not in any wise release the party insured from liability on said notes.

"Melvin A. Strand, Applicant. W. L. Mosgrove, Agent."

The question unanswered in the report of the medical ex-

amination resulted in further inquiry by defendant and in consequent delay. In the meantime the applicant went to a hospital, submitted to an operation for appendicitis, and died. The negotiating parties did not enter into a contract of insurance and the policy was never delivered, though the applicant was insurable when examined. The premium was returned to Oscar Strand, father of the applicant. From the undisputed facts there is a logical inference that the policy would have been issued and delivered except for the omission and delay mentioned. The record presents this difficult question: Was there actionable negligence in the failure of defendant to perform a duty owing to applicant?

For the sake of brevity the chronology of events in 1923 is indicated thus: November 23, application drawn and signed, premium paid and the conditional receipt issued; November 24, application received at home office of defendant; November 29, Mosgrove instructed by defendant to urge prompt examination of applicant; November 30, applicant reminded that a report of his medical examination had not been received; December 6, medical examination; December 7, report of medical examination received at home office; December 10, Myers directed by letter from defendant to procure the answer omitted from the report of the medical examination; December 17, additional demand by defendant on Myers for the omitted answer; December 21, Scott inquired about the fate of the application; December 22, illness of applicant; December 23, applicant taken to hospital and operation for appendicitis performed; December 24, Scott advised by mail that the application was held up at the home office "pending the completion of the medical report," and he was directed to see Myers and urge him to complete it; December 28, Myers, without further questioning of applicant, wrote in a separate document the answer "none" to the question, "Have you ever had inflammatory rheumatism?" December 26, applicant died; December 27, application approved; December 28, undelivered policy prepared.

Plaintiff did not attempt to plead a cause of action for in-

surance, but confined his remedy to damages for negligence. An action based on negligent failure of a life insurance company to act promptly on an application for insurance after a conditional payment of the premium is comparatively new in the law of insurance. There is a diversity of opinion on the subject. In *National Union Fire Ins. Co. v. School District*, 122 Ark. 179, L. R. A. 1916D, 238, the opinion contains the following:

"The better reason and the decided weight of authority supports the doctrine that mere delay in passing upon an application for insurance cannot be construed as accepting such application and consenting to be bound for the insurance sought by it, nor can a cause of action for negligence be grounded upon such delay."

*Interstate Business Men's Ass'n v. Nichols*, 143 Ark. 369, seems to be a case of like import. Judge Cornish took the same view in *Meyer v. Central States Life Ins. Co.*, 103 Neb. 640, 644.

On the contrary, a right of action for negligence in failing to act promptly on an application for insurance has been recognized by some of the courts of last resort. *Wilken v. Capital Fire Ins. Co.*, 99 Neb. 828; *Duffie v. Bankers Life Ass'n*, 160 Ia. 19; *Johnson v. Farmers Ins. Co.*, 184 Ia. 630; *Boyer v. State Farmers Mutual Hail Ins. Co*, 86 Kan. 442. Cases on both sides of the question are discussed by the supreme court of Illinois in an opinion reported and annotated in 15 A. L. R. 1021, under the title of *Bradley v. Federal Life Ins. Co.* The case is reported also in 295 Ill. 381.

The view that there is a remedy based on negligence seems to be founded on reason and justice. The receipt in the present case shows on its face that the insurance company, without assuming any insurance risk, accepted conditionally the first annual premium. The transaction makes the insurance company applicant's trustee for the return of the premium if the application is rejected and for the unconditional acceptance of the premium if the application is approved and the policy delivered. In connection with

Strand v. Bankers Life Ins. Co.

the application the receipt implies time for a proper investigation of the risk under consideration. Good faith and fairness of both parties are required in negotiations for insurance. The retaining of the money of the applicant beyond a reasonable time would deprive him of its possession and use during the delay. The use of money or interest thereon is a valuable right. Negligent or inexcusable delay on the part of a trustee is a wrong, if it deprives the beneficiary of the use of a trust fund which has served its purpose as such. The receipt, the application and the report of the examining physician imply a duty on the part of the insurance company to act on the proposed risk within a reasonable time under the circumstances surrounding the negotiations. In addition, an unreasonable delay and the retention of an unearned premium might deprive an insurable applicant of an opportunity to apply elsewhere for and to procure life insurance. Furthermore, an insurance company transacts business under a charter from the state. It is now recognized that insurance is affected with a public interest. It is regulated by the government for the protection of the insuring public. The privilege of an insurable person to apply to a licensed insurer for insurance is a vital feature of domestic life as well as of the industrial world. The possession of a premium held by an insurance company as a trust fund, without any obligation for insurance prior to the issuance and delivery of a policy, imposes the duty of acting on the application within a reasonable time. The conclusion therefore is that there is a remedy in the form of an action in tort for an unnecessary and negligent delay in performing such a duty, if it prevents an insurable applicant from procuring a policy which he would otherwise have received, thus causing a loss.

Is the evidence on the issue of actionable negligence sufficient to sustain a verdict in favor of plaintiff? The applicant bound himself by an agreement that there should be no contract of insurance except upon issuance and delivery of a policy to him while in good health. Under the terms of the receipt, defendant was required to return the pre-

mium upon the disapproval of the application, but, if approved, the policy was to date at issue. Referring to 1923, the application was dated November 23 and the applicant was not in good health after December 22. If therefore there was an unreasonable delay, it occurred between those dates. The applicant did not present himself for the medical examination until December 6. Prior thereto he alone was responsible for delay. Alleged negligence was consequently limited to the time between the date of the examination, December 6, and December 22, when the applicant lost his good health and with it his insurability. In the ordinary course of defendant's business the policy might have been issued within three days from the date of the examination, December 6, or on December 9, had the report of the medical examination been full, complete and true. Did evidence of mere delay for the length of time between December 9 and December 22, nearly two weeks, prove actionable negligence?

Defendant at its home office approves or rejects applications. Neither the soliciting agent nor the medical examiner had authority to contract for insurance. When the applicant died defendant did not have the information essential to the approval of the application. The omitted answer to the inquiry about rheumatism had not been received at the home office. It was material to the risk. The parties to the lawsuit so stipulated. There is no evidence of fraud or deceit on the part of any one connected with the negotiations or transactions. The circumstances indicate the good faith of the applicant, the defendant, the agents and the physician. Defendant twice demanded of Myers an answer to the question relating to rheumatism. No one else was authorized to reduce answers of the applicant to writing. The examiner's report signed by both applicant and physician declared on its face in plain type: "The medical examiner will invariably give the answers in his own handwriting." Requests for the omitted answer were properly directed to him. In the application applicant represented the medical report "to be full, complete and true."

The physician represented both applicant and defendant for purposes of the data essential to underwriting. There was no delay in transmitting the medical examiner's report itself. By mere error or oversight one material answer in a long list of questions was not inserted. Negotiating parties in the ordinary affairs of life do not measure each other according to the standard of infallibility—an attribute of Omnipotence. In an action against a physician for negligence in the performance of professional duties, though involving human life, he is not answerable for a higher degree of skill than that ordinarily possessed by members of his profession generally. In his capacity as medical examiner of an applicant for insurance his responsibility is no greater. By exacting in advance an agreement that there should be no contract of insurance prior to the issuance and delivery of a policy, defendant guarded against the creation of a pecuniary liability before expiration of the reasonable time required for ascertainment of material facts in the usual course of its insurance business. While diligently seeking in good faith for two weeks the necessary information through the regular channels in the usual manner, defendant was not liable for negligence. *Evans v. International Life Ins. Co.*, 112 Kan. 264.

In *Duffie v. Bankers Life Ass'n*, 160 Ia. 19, and in *Wilken v. Capital Fire Ins. Co.*, 99 Neb. 828, cited by plaintiff, the information essential to the assuming of the risk was fully disclosed by the application or other documents when executed. There was no error requiring further time for examination and correction as in the present case. Such a difference was noted in *Page v. National Automobile Ins. Co.*, 109 Neb. 127.

An earnest argument was directed to the propositions that the examining physician was negligent in omitting an answer to the question relating to rheumatism and in failing to report the answer later when requested by letter to do so, and that this negligence was attributable to defendant and prevented the delivery of a policy while applicant was in good health. The physician was employed by defendant

in a limited capacity. There was no evidence of negligence in his employment. He was engaged in the general practice of medicine. The examination of an applicant for insurance was an incident of his professional duties. His practice took him away from his office. He was busy during the time in question. He did not keep clerical help. When asked for a reason for his failure to answer promptly the first letter inquiring for the omitted information, he testified: "There is no reason that I can recollect at this time except that I was busy." He said that the letter might have been misplaced and that he thought he had answered it. The physician was employed for the mutual convenience of applicant and insurer. He acted for both in conducting the examination. He did not devote all his time to defendant's business. The negotiations between applicant and defendant were conducted in view of the surrounding circumstances. Necessary information was contemplated by both as a condition of incurring an insurable risk. Time for checking and correcting errors was implied by the receipt for the premium, the application and the physician's report —documents signed by the applicant himself. In absence of fraud or deceit, mere failure to insert in the report of the medical examination an answer to a material question and delay of nearly two weeks in answering the letter of inquiry did not necessarily create in tort a liability equivalent to a contract of insurance. The applicant, over his own signature, represented the report of the examining physician "to be full, complete and true." He signed the report and had an opportunity to see that his own answers were properly reduced to writing. The report was not accepted as originally prepared. The error was discovered but never ratified. Defendant, while seeking in good faith without unnecessary delay the omitted information, was not chargeable with the alleged negligence imputed by plaintiff to the examining physician. *Evans v. International Life Ins. Co.,* 122 Kan. 264. It follows that actionable negligence was

not shown and that the district court did not err in directing a verdict in favor of defendant.

AFFIRMED.

Note—See Insurance, 32 C. J. 981 n. 90, 1106 n. 42, 45 new; 36 L. R. A. (N. S.) 1211, 51 L. R. A. (N. S.) 873; 4 R. C. L. Supp. 928, 5 id. 785, 6 id. 838.