55 So.2d 705

## THOMAS v. LIFE INS. CO. OF GEORGIA.
### No. 39910.
Nov. 5, 1951.

Rehearing Denied Dec. 10, 1951.

Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for defendant-appellant.

Durrett & Hardin, Baton Rouge, Erlo J. Durbin, Dunham Springs, of counsel, for plaintiff-appellee.

FOURNET, Chief Justice.

The Life Insurance Company of Georgia is appealing from a judgment in favor of

the plaintiff, Mrs. Elma Thomas, for the face amount of a life insurance policy applied for by her late husband, Ernest I. Thomas, the plaintiff having been designated as the intended beneficiary in the said application for insurance. The defendant resisted suit on the ground that the application was never approved and no policy of insurance was ever issued; and alternatively, that the application was founded in fraud.

It appears that on May 14, 1948, Thomas, 32 years of age, a resident of Watson, Louisiana (where he was employed as a gravel pump operator for the Livingston Sand & Gravel Company), signed a form application for a $5,000 policy, paying in advance the first monthly premium of $3.82. To complete the application, on May 16 Thomas was taken by the company's local agent to Dr. W. H. Hennigan for a physical examination, and the application was duly forwarded to the home office in Atlanta, Georgia. It contained the provision that " * * * the insurance hereby applied for shall not go into force unless and until the policy is delivered to the applicant and the first premium paid during the continued good health of the applicant * * *."

The policy applied for was never issued, the defendant's actuary testifying that the application was rejected because of Thomas' occupation, which made him ineligible for the type of insurance for which he had applied; but on June 14, 1948, a policy was issued differing from the one applied for in

that premiums were at a higher rate and it contained no disability "waiver of premiums" clause. This was forwarded to the District Office of the company at Baton Rouge with instructions that it be submitted to Thomas for consideration. (In the meantime, on May 11, the plaintiff had paid $7.60 to the local agent, Hancock, to apply on premiums for the two succeeding months, but this amount was later returned to her partly in groceries from Hancock's store and partly in cash.) The policy issued on June 14 was never submitted to Thomas, but was returned to the home office after the company learned that the applicant had undergone a brain operation. On July 14 Thomas died; an operation for tumor of the brain had disclosed that he was suffering from cancer in an advanced stage. He had never been advised of the rejection of his application.

■ A perusal of the record unmistakably shows that the application was not founded in fraud, as contended in defendant's alternative plea. Not only had Thomas made no effort to obtain insurance elsewhere, but it appears that he was actively solicited on several occasions by Hancock, a grocer in the same small community. There is nothing to indicate that when Thomas signed the application on April 14, and took his physical examination on April 16, he had reason to suspect that he was suffering from a serious and fatal illness—or from any illness. The very fact that he telephoned the same doctor, Dr.

Hennigan (whom he had never before consulted), some five or six hours after completion of his physical examination, requesting a prescription for relief of a headache which had plagued him for several days, dispels any idea of fraud or collusion on his part; moreover, he returned to work and continued in his regular employment, which was admittedly arduous, until April 20. On the 21st he consulted a doctor in Baton Rouge, and on the 22nd he again called on Dr. Hennigan, in a state of obvious misery because of excruciating pain from a headache which had persisted intermittently and grown steadily worse since his examination. This is corroborated by the testimony of Dr. Hennigan, who stated that the symptoms of a brain tumor can come on suddenly, without previous premonitory signs, in which case the symptoms are said to be "explosive," and that when Thomas consulted him on the 22nd he then formed an opinion that something was radically wrong—which opinion was borne out by the subsequent history of the case. On the same night Thomas was admitted to a hospital in Baton Rouge and on April 27 he was removed to the Veterans Hospital at New Orleans for further examination. Two days later a brain tumor was removed; analysis disclosed that this was a seedling which had been deposited in the brain, and suggested that the primary source of the tumor was probably within one of the abdominal organs. The progress of the disease was found to be so advanced that Thomas' condition was pronounced

hopeless; and although he made a successful recovery from the operation and was returned to his home, he grew steadily worse and death resulted within a few weeks.

 On the main demand, the plaintiff apparently conceded, as she must (Revised Civil Code, Arts. 1800, 1805, 1806, 1808; 12 Am.Juris., Contracts, Sec. 36; 29 Am. Juris., Insurance, Secs. 139, 140; 44 C. J.S., Insurance, § 232a (1) (b) and (c); Appleman, Insurance Law & Practice, Vol. 12, Sec. 7151), that the application of her deceased husband was in effect rejected by the defendant company when it issued a new form of contract for his consideration incorporating different terms and provisions and carrying a higher premium (this counter offer never ripening into a contract since it was never even submitted for acceptance), and is relying for recovery on the doctrine enunciated in the case of Harding v. Metropolitan Life Insurance Co., La.App., 188 So. 177 (in which this Court refused writs), which she contends is controlling here. The doctrine approved by the Court in that case was as announced in Strand v. Bankers' Life Insurance Co., 115 Neb. 357, 213 N.W. 349, i. e., that since an unreasonable delay and the retention of an unearned premium might deprive an insurable applicant of an opportunity to apply elsewhere for and to procure life insurance, there is a remedy in the form of an action in tort for an unnecessary and negligent delay in performing the duty of

acting on the application within a reasonable time if, by such delay, an insurable applicant is prevented from procuring insurance, thus causing a loss.

In this case, the facts, unlike those in the Harding case, are that the symptoms of the malady from which Thomas died declared themselves on the very day that he completed his application by taking his physical examination. Within five days those symptoms, which had never subsided, became acute, and thereafter we cannot conceive of any insurance company which would have issued a policy of insurance on Thomas' life in view of the known facts. The plaintiff herself admitted that it would be correct to say that her husband had been ill continuously from April 19 to the date of his death, and under the circumstances delivery of the policy could hardly have been effected "during the continued good health of the applicant." Even were we to disregard the symptoms, the operation on April 29 disclosed the fatal nature of the illness, and certainly the intervening period was a reasonable time for the company to deliberate whether or not it would accept this application.

On the other hand, even if it be conceded that the company delayed unduly in rejecting Thomas' application (April 16 to June 14), since the record fails to show that he would have applied elsewhere for insurance or that any company would have issued a policy to him in the condition in which he found himself on and after April 22, it cannot be said that Thomas suffered any loss due to the defendant's negligence. Nor can recovery be sustained on a theory of estoppel, since the applicant was not misled to his prejudice by the actions of the defendant.

For the reasons assigned, the judgment appealed from is annulled and set aside, and it is ordered, adjudged and decreed that there be judgment rejecting plaintiff's demands.

HAWTHORNE, J., absent.