341 So.2d 1366 (1977)
Mrs. Harry G. DUKE
v.
VALLEY FORGE LIFE INSURANCE COMPANY et al.
No. 7715.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1977.
Rehearing Denied February 15, 1977.
*1367 Deutsch, Kerrigan & Stiles, Francis G. Weller, New Orleans, for defendants-appellants.
Louis C. Philips, New Orleans, for plaintiff-appellee.
Before GULOTTA, STOULIG and BEER, JJ.
BEER, Judge.
Plaintiff-appellee, the widow of decedent, Harry Duke, filed this suit against Valley Forge Life Insurance Company, The Planning Corporation and The International Association of Electrical Inspectors for recovery of $10,000 (plus legal interest and costs) allegedly due her as sole beneficiary under a group life insurance policy.
In all matters pertinent to this litigation, The Planning Corporation was the local agent for Valley Forge Life Insurance Company (hereafter "Valley Forge") and The International Association of Electrical Inspectors (hereafter "IAEI") was an account holder of the insurance company in behalf of those of its members who chose to participate in the group life insurance program of Valley Forge.
Defendants contend that the alleged insurance coverage which Mrs. Duke seeks to enforce on a theory sounding in tort never, in fact, came into existence. They further contend that even if it had, material misrepresentations vitiated coverage. They contend such tort recovery requires proof of the insurer's unreasonable delay in providing coverage and that similar coverage could, otherwise, have been obtained elsewhere. They argue that Mrs. Duke failed to produce any evidence to support the second part of this burden and that the time factor involved does not support a fair definition of "unreasonable delay."
Trial on September 2, 1975, was followed by judgment in favor of plaintiff Mrs. Duke and against defendant Valley Forge for $10,000 (the coverage amount of the policy), together with legal interest thereon from date of judicial demand until paid, and for all costs. On December 19, 1975, Valley Forge's motion for a new trial was denied. Suspensive appeal by Valley Forge was answered by Mrs. Duke seeking legal interest "from the date of receipt of due proof of death" until paid and reasonable attorneys' fees.
It is helpful to consider certain relevant facts in chronological order:
Early in 1972, a brochure circulated among the members of IAEI had solicited them to purchase life insurance provided by a group policy underwritten by Valley Forge (with The Planning Corporation acting as its agent). The program, sponsored by IAEI, was made available to all of its members under 65 years of age. If the member applied during the charter period ending May 1, 1972, no medical examination was initially required.
Harry Duke, a member of IAEI, 61 years of age, filled out an application and forwarded it (accompanied by a premium check in the amount of $157.60) on February 23, 1972. He sought to obtain life insurance coverage in the amount of $10,000. However, the payee of the check was incorrectly shown as "Mrs. Harry Duke" and so it was returned by the company's agent. A new check in the same amount with the payee properly shown was sent forward by *1368 Duke on or about March 10 and, thereafter, negotiated by Valley Forge on or about March 21.
The application, signed by Duke, contained the following representation:
"I represent that the statements and answers shown above are complete and true to the best of my knowledge and belief and understand that the Insurance applied for will not become effective unless and until the first premium has been paid during the lifetime of the insured and the Valley Forge Life Insurance Company unconditionally approves and accepts this application." (Emphasis ours.)
Thereafter, on April 14, 1972, the underwriting department of Valley Forge requested its agent, The Planning Corporation, to secure, from Duke, an authorization for them to obtain a statement from Duke's physician detailing a high blood sugar situation that had been reported by Duke on the application form[1] which had been sent to the company with his original check. This was handled by letter dated April 26, 1972, to Mr. Duke, enclosing, for his signature, an authorization permitting Valley Forge to obtain additional information from his physician. A signed authorization bearing Duke's signature then permitted Valley Forge (through The Planning Corporation) to contact Dr. J. D. Landry, which they did on May 3, 1972, asking that he complete a "Diabetes Questionnaire" concerning Mr. Duke and return same to Valley Forge. Dr. Landry responded to this on May 8[2] in a manner that made it clear that any problem that Mr. Duke had with diabetes was totally overshadowed by the fact that, on May 6, it was discovered that he was suffering from terminal stage cancer.
At this point in describing the existent circumstances, we must go back in time to May 1. On that day, Mr. Duke had been hospitalized as a result of "intestinal obstruction" which, on May 6, required surgical intervention and that surgical intervention resulted in a diagnosis of metastatic adenocarcinoma. Thus, Dr. Landry's report of May 8 was essentially unconcerned with Duke's diabetic condition since he was clearly dying of cancer. Though he returned home for a short period of time, Mr. Duke was again hospitalized on May 26 and died on June 1 of Metastatic Carcinoma of Colon.
On May 24, 1972, The Planning Corporation received and transmitted the May 8 memorandum of Dr. Landry to Valley Forge, resulting, on June 21, in Valley Forge notifying The Planning Corporation that Duke's application was declined because of adenocarcinoma. Based on this notification, The Planning Corporation, on July 5, issued a premium refund check for $157.60.
At the trial, Dr. J. Durel Landry testified (via deposition) regarding all aspects of Duke's medical history: In August, 1971, he had made arrangements for Mr. Duke's hospitalization for a "checkup." Duke was admitted on September 13, 1971, and was, at that time, diagnosed as suffering from "Diabetes Mellitus." He was discharged on September 16, 1971. Dr. Landry classified Duke as a "mild diabetic" but went on to observe that by April, 1972, his blood sugar was "under control as far as diabetes was concerned."
Notwithstanding these observations, able counsel for all parties have stipulated that the underwriting department of Valley *1369 Forge had not been informed that Mr. Duke had been hospitalized in September, 1971, and thus were unaware that a diagnosis had been madeat that timeindicating that Duke was suffering from diabetes mellitus. It was further stipulated by counsel for all parties that if such information had been disclosed to said department at the time Duke submitted his application, or at any time between the submission of the application and Duke's death, the application would have been unequivocably rejected in accordance with the company's standard underwriting practices and guidelines.
The only other testimony adduced was that of Mrs. Harry Duke. She testified that Mr. Duke had "other insurance" besides the insurance which concerns us here and also testified that her husband had never been refused insurance to her knowledge. Finally, Mrs. Duke testified that Mr. Duke had no way of knowing that he had cancer prior to the surgery performed in May, 1972.
The explicit terms of the joint stipulation of counsel regarding the action that would have been taken by Valley Forge if Duke's September, 1971 hospitalization had, in fact, been made known to them on the application where such information was called for, had, in our view, the legal effect of limiting the scope of Mrs. Duke's recovery to a single possibility: The time period between the date upon which the application was accompanied by a check properly made payable to the company (March 10) and the date that Mr. Duke knew or should have known that his application was not being routinely accepted (April 26) must fall into the category of such "unreasonable delay" as to support the tort (or delictual) concept previously discussed. Even if that burden is successfully carried, appellants contend that Mrs. Duke must show that Mr. Duke's ability to have obtained insurance from another source did, concurrently, exist during that period.
We turn our attention to the time period between March 10 (when the properly drawn check was transmitted) and April 26 (when the application was knowingly being held up to await the completion of the "Diabetes Report"). Can this span of 47 days be considered an unreasonable delay?[3]
In Thomas v. Life Ins. Co. of Georgia, 219 La. 1099, 55 So.2d 705 (1951), the Louisiana Supreme Court dealt with a similar time span (April 16 to June 14a period of approximately 57 days), but the issue was not directly addressed "since the record fails to show that he (the assured) would have applied elsewhere for insurance or that any company would have issued a policy to him in the condition in which he found himself on and after April 22nd, ..."[4]
In Harding v. Metropolitan Life Ins. Co., 188 So. 117 (La.App.Orls., 1939), the application for insurance was made on February 12, 1929, followed by a physical examination on February 24th. The initial premium had been paid (although there was some question as to the correctness of the exact amount). On May 18, 1929, without confirmation or rejection of the application having been received, the assured died. The court applied the rationale set forth in Strand v. Bankers' Life Ins. Co., 115 Neb. 357, 213 N.W. 349, holding that "there is a remedy in the form of an action in tort for an unnecessary and negligent delay if it prevents an insurable applicant from procuring a policy which he would otherwise have received, thus causing a loss."
In Locke v. Prudence Mutual Casualty Co., 172 So.2d 351 (La.App. 4th Cir., 1965), *1370 we affirmed a district court judgment for defendant based upon the inapplicability of the Harding rationale where the time span was similar to that with which we are here concerned and where there were complicating factors somewhat similar to those in this case.
Not entirely satisfied because of the sparsity of Louisiana decisions on this point, we widened our inquiry. However, decisions from other jurisdictions offer little additional help beyond a general indication that appellate courts have, more often than not, followed the trial court's determination of what does or does not constitute "unreasonable delay." Most of the cases from other jurisdictions are affirmances, which, regardless of the extent of the delay, hold that the conclusion reached by the trial court was not so erroneous or compellingly in error as to require substitution of the appellate court's judgment for that of the trial court.
However, in most of those cases, there is no difference of opinion between the appellate court and the trial court regarding the number of days involved in the delay, whereas, in this case, we are strongly of the view that the delay period is only 47 days, while the trial court bases its judgment on a delay period of 74 days.
Taking all factors into consideration, we are of the view that a delay of 47 days is not so unreasonable as to cast Valley Forge in judgment.
Having reached this conclusion, we are not required to turn to a consideration of the case on the basis of the further requirement that appears to be involved from a careful review of Thomas, supra. The Thomas case holds that "even if it be conceded that the company delayed unduly in rejecting (the) application," there can be no relief if "...the record fails to show that he would have applied elsewhere for insurance or that any company would have issued a policy to him ..." However, in view of the fact that a reviewing court may reach a conclusion different than ours with respect to the reasonableness of the delay, we feel obliged to address ourselves to the record as it responds (or fails to respond) to the dictates of Thomas, supra:
A diligent and painstaking review of this record forces the conclusion that this critical burden has not even been addressed, much less carried, by appellee. Indeed, the only evidence that we have before us with respect to the decedent's insurability during the critical period in question is the categoric stipulation by counsel for both parties that a complete disclosure by Mr. Duke of his medical status at the time of application would have, unqualifiedly and unconditionally, resulted in the rejection of his application by Valley Forge.
The record simply does not support the trial court's statement that Mr. Duke "was misled, to his prejudice, by Valley Forge Life Insurance Company's failure to act between the time he made application and the time it was discovered he had carcinoma." There is no such showing. Indeed, the only showing relative to Mr. Duke's health as of the time that he applied for the insurance coverage is the joint stipulation of counsel which says:
"While the application of Harry Duke under the aforesaid insurance program was being considered, and prior to his death, the aforesaid department had never been informed that Duke had been hospitalized in September, 1971, and that a diagnosis was made at that time that Duke was suffering from Diabetes mellitus.
"Had this information been disclosed to said department at the time Duke submitted his application, or had said information been otherwise disclosed to said department at any time between the submission of the application and Duke's death, the application would have been unequivocally rejected, in accordance with the company's standard underwriting practices and guidelines."
So, while there is no affirmative evidence whatsoever to support the critical burden enunciated by Thomas, there is solid indication to the contrary effect in the joint stipulation.
*1371 Accordingly, the judgment of the 24th Judicial District Court is reversed, and it is now ordered, adjudged and decreed that there be judgment herein in favor of defendant-appellant, Valley Forge Life Insurance Company, and against plaintiff-appellee, Mrs. Harry G. Duke, dismissing plaintiff-appellee's claim. Each party is to bear its own costs.
REVERSED AND RENDERED.
GULOTTA, J., concurs.
GULOTTA, Judge, concurring.
I concur with the result.
As stated in the majority opinion, the application form states that the insurance applied for will not become effective until the first premium has been paid (March 10) and the insurance company "unconditionally approves and accepts this application". On April 14, a request was made by the insurer to its agent to secure medical authorization from Duke relating to Duke's high blood sugar condition referred to in his application form. It was not until April 26 that the request for authorization was sent from the insurer's agent to Duke to obtain the additional information. As a result of the authorization granted to the insurer by Duke, Duke's physician was contacted on May 3. The physician's response on May 8, in which the insurer was advised that Duke was suffering from terminal-stage cancer, obviated the necessity of further pursuit of the inquiry relating to diabetes. Duke died on June 1. The application was denied on June 21, and a refund check was issued to Mrs. Duke on July 5.
I view this as a contract case. Implicit in the application form is that the insurer is afforded opportunity to make inquiries before acceptance or rejection of the contract of insurance. As pointed out by the majority, the insurer is allowed a reasonable time to make inquiries. If the delay is "unreasonable", the insurer is deemed to have accepted the application.
Applying the chronology of occurrences, I would conclude that the delay in making the inquiry was not unreasonable under the circumstances.
I do not find any compelling reason to discuss whether the facts of our case do or do not come within the ambit of the Thomas case cited by the majority. Accordingly, I do not subscribe to that part of the majority's opinion which places a burden on plaintiff to show decedent's insurability. I do not view this case as one sounding in tort (see Thomas), but as one sounding in contract. I concur with the result reached by the majority.
NOTES
[1] The application includes the following question: "Have you or any dependent named ever had or been advised that you had diabetes?" Mr. Duke affirmatively replied to the question and described his "Condition and Treatment" as being: "Diet for High Blood Sugar." Under the "Degree of Recovery" column, Mr. Duke responded: "Normal Now."
[2] Notwithstanding the fact that the document sent to Dr. Landry was entitled "Diabetes Questionnaire," all of the queries concerning diabetes were left unanswered except that entitled "prognosis," which was answered: "poor." Under the section entitled "remarks," Dr. Landry stated: "This patient was operated on at Southern Baptist Hospital in New Orleans on 6 May 72. He had a low intestinal obstruction. Seeding was found over the entire peritoneum. The original site was not determinedThe pathological diagnosis was adenocarcinoma, metastatic." (Emphasis ours.)
[3] In written reasons, the trial judge measured the critical time span by starting on February 23, 1972, when the applicationaccompanied by the incorrectly drawn check was received by valley Forge and ending on May 8, the date of Dr. Landry's report a span of 74 days. However, we are of the view that Valley Forge had no duty to commence processing the application until it was accompanied by the proper check which was sent on March 10. Likewise, we are of the view that the letter of April 26, 1972, was a sufficiently clear signal that the application was not going through on a routine basis to notify applicant of this fact.
[4] We shall return to a consideration of this very important issue as it is raised in Thomas, supra, at a later point in this opinion.