385 So.2d 540 (1980)
Laura Jo Rose DUPLISSEY, Plaintiff-Appellant,
v.
SOUTHERN UNITED LIFE INSURANCE COMPANY and the Bank of Lecompte, Defendants-Appellees.
No. 7586.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
Rehearing Denied July 8, 1980.
Donald M. Garrett, Alexandria, and Fusilier, Pucheu, Soileau & Coreil L. O. Fusilier, Ville Platte, for plaintiff-appellant.
Provosty, Sadler & deLaunay, David P. Spence, Alexandria, Trimble, Randow, Smith & Wilson, David P. Smith, Alexandria, for defendant-appellee.
Before CULPEPPER, CUTRER and DOUCET, JJ.
CUTRER, Judge.
Plaintiff brought this suit as the Administratrix of the succession of her deceased husband, Johnny Lee Duplissey, against Southern United Life Insurance Company (Southern) and the Bank of Lecompte (the Bank) for recovery of $20,000.00 with interest and penalties allegedly due on a credit life insurance policy. Coverage was denied by defendants. From a judgment rejecting her demands, plaintiff brings this appeal. We affirm.
On November 26, 1976, prior to the bank loan in January, Mr. Duplissey, the deceased, *541 received a medical examination from Dr. Carlton of Lecompte, Louisiana. The results indicated that he was in good health. On January 12, 1977, the day before the bank transaction, Mr. Duplissey was seen again by Dr. Carlton. Duplissey complained of lower back pain which was diagnosed as prostate inflammation.
On January 13, 1977, Duplissey executed a note in favor of the Bank in the amount of $39,933.74 which was the amount required for the purchase of a truck by Duplissey. Credit life insurance was requested by Duplissey. Pursuant to this request, Wade Jones, President of the Bank, issued the certificate of credit life insurance in question. The credit life policy was for the amount of $20,000.00.
On January 20, 1977, Duplissey consulted with his regular physician, Dr. Wesley R. Dyer of Alexandria, complaining of fatigue and weight and appetite loss. Dr. Dyer hospitalized Duplissey for observation and tests. After a week of tests, Dr. Dyer concluded that Duplissey had an obstruction in his urinary tract. Exploratory surgery on February 2, 1977 revealed that Duplissey was suffering from cancer. According to the deposition of Dr. Dyer, Duplissey had cancer prior to January 13, 1977.
At the close of business on January 31, 1977, the Bank forwarded to Southern the certificate of insurance. Southern received the certificate on February 2, 1977. On the same date a request for an investigation was made by Southern to Equifax, an insurance investigation firm with an office in Alexandria. Mrs. Duplissey was contacted by equifax on February 17, 1977 and asked about the state of her husband's health. Mrs. Duplissey explained that her husband had cancer and surgery was scheduled. This information was received by Southern on February 21, 1977. As a result of this information, Louis H. Strickland, an underwriter for Southern, mailed notices to Duplissey and the Bank advising each that coverage had been denied.
Duplissey died of cancer on April 29, 1977.
The issues presented on appeal are: (1) Whether coverage began upon the issuance of the certificate of insurance by the president of the Bank as agent for Southern; (2) if not, whether Southern and the Bank are equitably estopped to deny coverage; or (3) whether the Bank failed to timely file the certificate of insurance with the company, thus rendering the Bank liable for negligence.

COVERAGE
The trial judge found that there was no coverage under the policy. The trial court relied on provisions printed on the certificate of insurance issued on Duplissey. The provisions read as follows:

"CONDITIONS OF COVERAGE
"Southern United Life Insurance Company hereby certifies that under and subject to the terms of a Master Creditor-Debtor Insurance Policy issued to the Creditor named on the reverse side, the Debtor, if he is in insurable health at the time this certificate is written, is insured for one or more of the coverages listed below provided, however, that the desired coverage must be indicated in the schedule on the face of this certificate.

* * * * * *
"The Company may require evidence of insurability satisfactory to it with respect to each debtor who is issued a certificate of insurance. If the Company finds that any applicant is not an insurable risk according to its underwriting standards, it reserves the right to decline the insurance on the life by indicating its intention in writing to the Creditor within 31 days from the time the individual Certificate was received in the Home Office." (Emphasis added.)
The trial court noted that the certificate provided that it is subject to the master policy which policy includes the following pertinent provisions:
"EFFECTIVE DATES OF INSURANCE. Each eligible debtor under this policy shall become insured with respect *542 to his indebtedness to the Creditor on the later of the following dates:
1. The date he becomes eligible for insurance, and if an application is required, applied for such insurance; or

2. The date on which the Company determines evidence of insurability of the debtor to be satisfactory, if such evidence is required hereunder.

"EVIDENCE OF INSURABILITY. The Company may require evidence of insurability satisfactory to it with respect to each eligible debtor who applies for insurance hereunder with respect to an indebtedness. If the Company finds that any applicant is not an insurable risk according to its underwriting standards, it reserves the right to decline the insurance on the life by indicating its intention in writing to the Creditor within 31 days from the time the individual certificate was received by the Company. If the debtor should die during the 31 days the insurance shall be deemed to have been in effect if the Company, acting on its regular underwriting methods, would have accepted the insurance. Any premium paid under this policy for insurance not granted will be refunded to the Creditor on demand." (Emphasis added.)

The plaintiff contends that, even though it was subsequently discovered that Duplissey was not in sound health due to cancer, Southern was bound to give coverage due to the action of the Bank. Plaintiff contends that the provisions, which allow Southern 31 days in which to decline coverage, does not apply since there was no application required, there is no allegation of fraud or misrepresentation, no medical examination was required, no inquiry into Duplissey's health at the time of insurance, and the premium was paid.
The plaintiff cites the cases of Brasher v. Life Insurance Company of Louisiana, 306 So.2d 321 (La.App. 3rd Cir. 1975), writ den., 310 So.2d 639 (La.1975); Butler v. Vulcan Life & Accident Insurance Co., 179 So.2d 642 (La.App. 2d Cir. 1965). These cases are not applicable to the case at hand. Those cases did not involve the contractual right of the insurance company to make a determination of the insurability of the applicant after the certificate was issued and to reject the application within 31 days of the receipt of the certificate by the home office for the lack of insurability.
In the case at hand, it is clear that Southern, under the provisions on the certificate, had the right to require evidence of insurability and to decline coverage within the 31 day period from receipt of a certificate in the home office. The evidence establishes that, according to Southern's underwriting standard, Duplissey was uninsurable.
Contrary to the plaintiff's assertion, that under the agency clause the bank president could bind Southern, Southern specifically retained the right to reject applicants. The pertinent language of the agency agreement is as follows:
"1. The Agent shall solicit life, accident and health insurance from debtors appearing to be in sound health and actively employed and shall forward to the Company all applications or lists of applicants on appropriate forms furnished by the Company daily or at weekly intervals as directed by the Company. No insurance shall be written on a debtor except at the time the indebtedness is incurred.

"2. No applicant for insurance shall be submitted to the Company unless the Agent shall have received from such applicant full settlement of the premium on the insurance applied for. The Company reserves the right to accept or reject any application submitted." (Emphasis added.)

It is clear that, even if the bank president issued certificates, that Southern could decline coverage, and that the president could not bind Southern. According to the policy and the certificate, the right to reject depended on the insurability of the applicant. The word "applicant" in these clauses includes those who are issued a certificate since the period to reject is based on the date of receipt of the certificate at the home office. We do not interpret the clause, concerning the right to require evidence of insurability, to mean such evidence *543 must be required before the certificate is issued. As stated by the trial court:
"... under the clear terms of the contract, in both the certificate and the master policy, the insurer reserved the right to determine the insurability and to decline coverage for a period of thirty-one days."
We find no error by the trial court in its finding in this regard.

ESTOPPEL
Plaintiff-appellant's next argument is based on a theory of equitable estoppel. In Ledoux v. Old Republic Life Insurance Company, 233 So.2d 731 (La.App. 3rd Cir. 1970), we said:
"Equitable estoppel ... arises when one by his actions, or by his silence when he ought to speak, induces another to believe certain facts and the other relies on these facts to his prejudice."
Plaintiff argues that the bank president induced Duplissey to believe he had coverage and that he would not have incurred the debt without first obtaining coverage.
The trial court made the following findings:
"Wade Jones, III, President of the Bank, handled both the loan and insurance application. In testimony, he stated that no inquiry was made about Duplissey's health and no statement was made regarding the terms of the insurance contract. Certainly, no explanation was offered regarding the delay in effectiveness because Jones stated that he believed that coverage was effective upon issuance of the certificate. Jones was unaware of the actual terms of the agency agreement. This may well be due to the fact that Jones was agent for other insurers with policies which may have been different. Jones could not recall any conversation regarding insurance when it was made part of the loan transaction.

"Jones also testified that Duplissey had carried a credit life insurance policy on previous loans but could not recall if he had also handled these transactions.

"The Court does believe that the manner in which an individual, such as the President of the Bank, accepts an application for insurance without question or explanation could well induce some individuals to take this as a representation that coverage existed. Key v. Cherokee, supra. However, the Court has no evidence from which it can conclude that the deceased was such a person. The Court has no knowledge of Duplissey's education but the evidence showed prior experience obtaining loans and insurance policies. The Court was also informed that Duplissey drove a school bus as well as owned and operated commercial vehicles, such as the one purchased with the loan at issue. Duplissey should have had sufficient experience in contractual relations to understand the import of a failure to read a policy. The Court cannot conclude, then, that Jones' conduct led Duplissey to believe anything that was not true.

"Even were Duplissey influenced, however, the Court does not find any facts which would support a positive finding on the second prong of the estoppel inquiry: an act of detrimental reliance. Assuming that Duplissey was informed of the delay in effective date, the Court does not believe that Duplissey would have acted other than he did. Duplissey was forty-one years old. He had no suspicion that he was ill with cancer. More importantly, the progress of Duplissey's illness was such that there would have been no opportunity for Duplissey to apply elsewhere and be considered insurable. Thomas v. Life Insurance Co. of Georgia, 219 La. 1099, 55 So.2d 705 (1951)."
We find no manifest error as the record supports the conclusion of the trial court that Duplissey did not rely on any representations by Jones to his (Duplissey's) detriment.
The plaintiff cites the following cases to support its position of estoppel. Flaherty v. Gulfco Life Insurance Company, 327 So.2d 436 (La.App. 3rd Cir. 1976), writ den., 329 So.2d 430 (La.1976); Key v. Cherokee Credit *544 Life Insurance Co., 298 So.2d 892 (La. App. 3rd Cir. 1974); Ducote v. Life Insurance Company of Louisiana, 245 So.2d 531 (La.App. 3rd Cir. 1971); Ledoux v. Old Republic Life Insurance Company, supra. These cases are not applicable to the facts herein. In each of those cases, the court found as a fact that the agent's representations were relied upon by the applicant to his detriment.

NEGLIGENCE
The final claim of the plaintiff-appellant is that the Bank negligently and unreasonably delayed in submitting the insurance certificate to Southern. The certificate was held by the Bank from January 13, 1977 to January 31, 1977, at which time it was sent to the insurance company. The evidence reveals that the insurance company requested the Bank to forward the certificates of insurance once a month, on the last day of business for the month. There was a time span of 18 days between the loan application and the forwarding of the certificate to the insurance company.
The leading case on an insurance company's obligation to accept or reject a policy within a reasonable period of time is Thomas v. Life Ins. Co. of Georgia, 219 La. 1099, 55 So.2d 705 (1951), in which our Supreme Court said:
"... that since an unreasonable delay and the retention of an unearned premium might deprive an insurable applicant of an opportunity to apply elsewhere for and to procure life insurance, there is a remedy in the form of an action in tort for an unnecessary and negligent delay in performing the duty of acting on the application within a reasonable time, if by such delay, an insurable applicant is prevented from procuring insurance, thus causing a loss."
See also, Antoine v. Sentry Life Ins. Co., 352 So.2d 768 (La.App. 3rd Cir. 1977); Wyble v. Preferred Life Assurance Society, 83 So.2d 785 (La.App. 1st Cir. 1955).
In a recent case, Duke v. Valley Forge Life Ins. Co., 341 So.2d 1366 (La.App. 4th Cir. 1977), the Fourth Circuit held that a delay of 47 days was not unreasonable. In that case the court determined that in order for the plaintiff to be successful he must prove that there was an unnecessary and negligent delay involved in the procurement of the policy and the person could have obtained insurance from another source.
We conclude that the 18 day delay in forwarding the policy was not unreasonable. Even if the delay could be labeled unreasonable, plaintiff did not show that such a delay deprived Duplissey of an opportunity to apply for and procure insurance elsewhere. Duplissey was clearly uninsurable at the time of the issuance of the certificate due to cancer.
The trial court did not err in denying recovery under the plaintiff's negligence theory.
For the assigned reasons, the judgment of the trial court is affirmed. Costs are assessed to plaintiff-appellant.
AFFIRMED.