Ronald **LAMARQUE** and **Lamarque Ford, Inc.,** Plaintiffs-Appellants,

v.

**MASSACHUSETTS INDEMNITY & LIFE INSURANCE CO.,** and **Equifax Services, Inc.,** Defendants-Appellees.

No. 85–3428.

United States Court of Appeals, Fifth Circuit.

July 14, 1986.

See also 794 F.2d 197.

---

Ellis B. Murov, Donald R. Mintz, New Orleans, La., for plaintiffs-appellants.

Francis Weller, New Orleans, La., for Massachusetts Indem. & Life Ins. Co.

Esmond Phelps, II, Dodge Hobson, New Orleans, La., for Equifax Services, Inc.

Before GEE and HIGGINBOTHAM, Circuit Judges, and HARVEY *, District Judge.

GEE, Circuit Judge:

In 1981, Coman Norton and Ronald Lamarque executed a shareholder's agreement which stipulated that they were co-owners and equal shareholders of Norton-Lamarque Ford, Inc., an automobile dealership in Jefferson Parish, Louisiana. The agreement provided that each owned 50 shares of common stock, with the value of the stock established at $8,000 per share. The agreement further provided that in the event of the death of either party, the Corporation would be obliged to purchase, and the deceased shareholder's estate obliged to sell, all 50 shares of common stock owned by the deceased's estate.

Thereafter, on July 10, 1981, Norton and Lamarque each applied to the Massachusetts Indemnity and Life Insurance Company ("MILICO") for a $400,000 "Business Annual Renewable Term" (BART) insurance policy (in the jargon of the trade, a "key man" policy, one designed to enable a company to pay resulting obligations and otherwise assist in transition in the event of a principal's death). The premium for this policy was payable "COD," that is, after the application had been approved.

One week later, on July 17, Norton individually applied for a $78,000 MILICO policy naming his son as a beneficiary. Norton forwarded a $181.05 advance premium with this policy application.

Over the next three months MILICO reviewed the policy applications. The BART policy was issued to Lamarque, but on October 26, 1981, MILICO notified Norton by separate letters that it was denying his applications because of its inability to obtain certain medical and personal history information. Less than four weeks later, on November 22, Norton died.

As the terms of the shareholder agreement stipulated, Norton-Lamarque Ford purchased the 50 shares of common stock held by Norton's estate for $400,000. Ronald Lamarque and Lamarque Ford later brought this action in state court against MILICO alleging damages under Louisiana tort law for MILICO's allegedly unreasonable delay in considering Norton's insurance application. The action was removed to federal court on the basis of diversity jurisdiction, and the plaintiffs later amended their complaint to assert a claim under Louisiana's fair trade practices statute.

MILICO moved for summary judgment in the district court against the plaintiffs' Louisiana tort law claims. The district court granted the motion, and we now take up the plaintiffs' appeal from that ruling pursuant to Fed.R.Civ.P. 54(b).

The district court's reasoning was straightforward: Louisiana's duty of promptness in processing an insurance application is dependent on the payment of a premium. Since Norton had not advanced any of the premium for the $400,000 policy with his application, the court reasoned, MILICO was under no duty to promptly process the application.

---

* District Judge for the Eastern District of Michigan, sitting by designation.

The appellants argue that Louisiana requires no such prepayment of a premium in evaluating policy applications, but even if there is such a requirement, a premium advanced for the $78,000 policy operated to create a duty for the $400,000 policy as well. We consider these contentions in turn.

Any analysis of Louisiana law on this subject must begin with an examination of *Thomas v. Life Ins. Co. of Georgia*, 219 La. 1099, 55 So.2d 705 (La.1951), where the Louisiana Supreme Court recognized the existence of a tort of unreasonable delay in an insurance application:

[S]ince an unreasonable delay and the retention of an unearned premium might deprive an insurable applicant of an opportunity to apply elsewhere for and to procure life insurance, there is a remedy in the form of an action in tort for an unreasonable delay in performing the duty of acting on the application within a reasonable time if, by such delay, an insurable applicant is prevented from procuring insurance, thus causing a loss. *Id.*, 55 So.2d at 706–707.

Two intermediate Louisiana courts have since had the occasion to address whether the principle enunciated in *Thomas* requires the prepayment of a premium to create a duty of promptness. The requirement was denied in a dictum in *Brunt v. Standard Life Ins. Co.*, 259 So.2d 575, 578 n. 1 (La.App. 1st Cir.1972). On the other hand, the court in *Antoine v. Sentry Life Insurance Co.*, 352 So.2d 768, 770 (La. App.3d Circuit 1977), held that the principle of *Thomas* does require that a premium be paid.

■ Federal courts sitting in diversity in this Circuit are obliged to apply the latest and most authoritative expression of state law applicable to the facts of a case. *Brumley Estate v. Iowa Beef Processors*, 704 F.2d 1351, 1360 (5th Cir.1983). Given that *Antoine* represents a clear holding and is of a more recent origin than *Brunt*, we conclude that the former represented the latest and most authoritative expression of state law for the district court.

Accordingly, the district court did not err in holding that a prepayment of part of the premium was necessary for MILICO to have had a duty to promptly consider Norton's application for the $400,000 policy.

■ The appellants urge that Norton's prepayment of a portion of the $78,000 policy premium operated to create a duty of promptness in regard to the $400,000 policy since MILICO used $478,000 in considering its underwriting requirements. We disagree. MILICO considered the $400,000 and $78,000 policies together only for evaluating MILICO's total risk. Otherwise, the two policy applications were distinct, since they were applied for at different times, named different beneficiaries, and were rejected with separate letters. Whatever claims there are for unreasonable delay are limited to the $78,000 policy, the one for which Norton advanced a premium.

The appellants' reliance on *Harding v. Metropolitan Life Ins. Co.*, 188 So. 177 (La.App.Orl.1939) on this question is misplaced. In *Harding*, the insurance applicant forwarded a premium advance with his application. The company denied the application but forwarded another policy to its agent with instructions to procure the applicant's acceptance. The applicant was not contacted by the agent nor notified of the initial policy application denial. The court awarded damages, declaring:

Our conclusion results not from the fact that the company was willing to issue the second policy, but from the fact that it failed to advise of its refusal to issue the first. Thus, since even without payment of the additional $1.50, Johnson's payments were sufficient to cover the first premium on the policy applied for, and, since it was that policy which he was justified in assuming would be issued, his failure to pay on the premium required by the second, even had he failed to do so, would be of no moment. *Id.* at 185.

Thus, the damage award in *Harding* was predicated upon unreasonable delay in acting upon the first policy applied for, the

 

one for which the premium had been advanced. It was not a case where damages for unreasonable delay in acting upon one policy application were awarded due to a premium advancement for a second policy.

No genuine issues of material fact having existed before it, the district court's grant of a partial summary judgment was proper and is accordingly AFFIRMED.