520 So.2d 451 (1988)
Sussan MAURONER
v.
MASSACHUSETTS INDEMNITY AND LIFE INSURANCE COMPANY and Steve Modica and Associates, a Division of A.L. Williams Company.
No. 87-CA-531.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
Rehearing Denied March 17, 1988.
Writ Denied May 13, 1988.
*452 Deutsch, Kerrigan & Stiles, Francis G. Weller, New Orleans, for defendants-appellants.
Pilié, Pilié and Landry, M. Arnaud Pilié, New Orleans, for plaintiff-appellee.
Before CHEHARDY, C.J., and GRISBAUM and WICKER, JJ.
CHEHARDY, Chief Judge.
This appeal arises from a judgment awarding plaintiff, Susan Mauroner, the proceeds of a life insurance policy insuring her deceased husband, Milton Mauroner, Jr., who died by suicide. The policy was issued by defendant Massachusetts Indemnity and Life Insurance Company (MILICO) through its agents, defendants Steve Modica and Associates (Modica), a Division *453 of A.L. Williams Company, and Bill Whittle and Associates, Inc. (Whittle). We affirm.
The facts in this case were stipulated to by the parties and show that Modica sold the Mauroners a life insurance policy in the amount of $100,000 covering Milton Mauroner, Jr., with a rider on Susan Mauroner for $10,000. The application was prepared by Steve Modica with information given to him by the applicants. While a medical examination was not required, a medical history was included with the application, along with an authorization for MILICO to consult the doctors and hospital where the Mauroners had previously received treatment or advice. The application was signed and mailed with a check for one month's premium ($60.90) to MILICO on November 6, 1981. Along with the application Modica completed a "MILICO New Business Transmittal Form" describing the coverage sought. It was further stipulated that the normal processing period for acceptance or rejection of these policies was four to eight weeks.
In return for payment of the initial premium, the Mauroners were given a conditional receipt. Under the terms of the receipt, MILICO agreed to provide insurance against any covered loss as of November 6, 1981, if the information in the application was found to be accurate and complete, if the Mauroners were otherwise found qualified and if the policy was thereafter issued.
After receipt of the application, MILICO notified Modica, through Whittle's office, that a clarification was needed on the coverage for Mr. Mauroner. That letter was dated November 20, 1981 and clarification was needed because Modica erroneously listed on the transmittal form a request for two "MOD 15" base plans for $50,000 each. The correct listing should have been either one "MOD 15" base plan for $100,000 or a "MOD 15" base plan for $50,000 with a companion rider for an additional $50,000.
No further action was taken until January 4, 1982, when someone in Whittle's office telephoned MILICO underwriting in Atlanta, Georgia, to find out the status of the application. After another telephone call the next day, it was determined that a "RVP" (regional vice president) was needed to telephone the correct coverage to MILICO. Upon receipt of the information, MILICO replied on January 7, 1982 that it was forwarding the information to the underwriting section. However, sometime after January 8, but prior to January 25, MILICO sent a copy of its underwriting memo of November 20, 1981, which originally requested the clarification, to the agents stamped "Final Notice". On January 25, 1982, Leslie Whittle of Bill Whittle's office telephoned MILICO again inquiring about the Mauroners' application. On that same day Mrs. Whittle also sent a written memo to MILICO reiterating the correct coverage. MILICO acknowledged receipt of the information the following day. The policy was thereafter issued ten days later on February 4, 1982. It was delivered to the Mauroners on February 28, 1982 at their home by Steve Modica. At that time he discussed the policy contents including the date of issuance (February 11, 1982) and the two-year suicide incontestability clause. In that respect he explained Mr. Mauroner could not "blow his brains out" for at least two years after the issue date of the policy in order for Mrs. Mauroner to collect the proceeds of the life insurance policy.
At the time Steve Modica sold the policy to the Mauroners he was aware that Mr. Mauroner was insured for $100,000 under a policy with State Farm Insurance Company. The Mauroners paid the last premium on that policy in December, 1981 which continued coverage to January 2, 1982. The State Farm coverage thereafter remained in effect through the application of dividends to the payment of premiums until March 2, 1982. From March until August 17, 1982, coverage was continued through the use of the cash surrender value of the policy.
Mr. Mauroner committed suicide on January 13, 1984. Because the death occurred three weeks prior to the end of the two-year suicide exclusion, MILICO refused to pay Mrs. Mauroner the proceeds of the life insurance policy, but refunded the premiums paid ($1,221.21) pursuant to the policy *454 terms. As a result, Mrs. Mauroner filed suit against the above-named defendants.
The case was fixed for trial on February 7, 1987, and at that time was submitted on the record. Judgment was rendered on May 8, 1987 in plaintiff's favor for the full amount of the policy. In his reasons for judgment the trial judge determined the agents of MILICO were negligent in failing to correct the coverage error timely and that the negligent delay caused Mrs. Mauroner's loss of the policy proceeds. He further concluded because of the negligence the policy's issuance date was November 6, 1981 and Mr. Mauroner's suicide occurred after the two-year suicide limitation period.
On appeal, defendants first contend the trial judge erred in finding the negligent delay between the application and the issuance of the policy justified changing the issue date from the actual date of February 4, 1982 to the application date of November 6. Defendants contend the policy issue date controls the commencement of the running of the two years under the suicide clause and that there is neither law nor a factual basis to support the substitution of the application date so as to place the death outside the two-year preclusion of coverage. Defendants secondly assert plaintiff has no cause of action for negligent delay in the issuance of the policy. Alternatively, defendants argue that the trial judge erred in holding the delay in processing the application was negligence or that it caused the plaintiff's damage.
In their first argument, defendants contend the suicide limitation and the incontestability clauses preclude plaintiff's recovery of the policy proceeds, because Milton Mauroner, Jr. committed suicide prior to the expiration of two years from the date the policy was issued. Defendants argue that the trial judge's substitution of the application date for the issue date was legally incorrect and was contrary to the policy and the stipulation of the parties.
The pertinent clauses state as follows:
"SUICIDEIf the Insured dies by suicide, while sane or insane, within two years of the date of issue, our only liability will be for the amount of premiums paid."
and
"INCONTESTABILITYThis policy will be incontestable after it has been in force for two years. The two years will begin as of the date of issue. This provision does not apply: (1) when any premium is unpaid beyond the grace period; and (2) to any rider for disability benefits or additional insurance specifically for death by accident."
Under these two provisions, it is the date of issue that controls the commencement of the two years and we find no cases which would justify a substitution of the application date for the issue date on the basis of the agent's negligence. However, in rebuttal, plaintiff asserts defendants are estopped from denying liability by the language of the insurance application and receipt. Plaintiff argues that language provides retroactive coverage to the date of application once the policy has been approved and issued.
The application and receipt signed by the parties and dated November 6, 1981 states in pertinent part.

"CONDITIONS OF COVERAGE
I understand and agree that, except as set forth below, I will not be covered for any loss occurring prior to the date on which the Company issues the policy for which I have on this date applied.
However, if all the following conditions are met, I understand and agree that if the Company does issue a policy to me, such policy will cover me in accordance with its provisions, limitations and exceptions for losses on or after the date set forth below:
1. All the information given by me in my insurance application must be accurate and complete to the best of my knowledge and belief.
2. The Company must find me qualified for the policy plan and amount applied for in accordance with its normal and customary underwriting standards and practices.

*455 3. At least one monthly premium for the policy plan and amount applied for must be paid with my insurance application."
It is clear that the policy does provide for retroactive coverage once the conditions have been met and the policy issued. However, the coverage provided is "in accordance with its [the policy's] provisions, limitations and exceptions." Since the two-year suicide clause is a provision or a limitation or an exception, it must be given effect. Consequently, we find the trial judge erred in substituting the application date for the date the policy was actually issued, although the finding does not per se negate defendants' liability.
In his reasons for judgment the trial judge found the defendants' actions in delaying correction of the error committed by Steve Modica was negligent and caused plaintiff's loss of the policy proceeds. Defendants contend the trial judge erred in this finding in that plaintiff has no cause of action for negligent delay in the issuance of a policy. Further, defendants assert that if a cause of action exists, the delay was not unreasonable and did not cause the loss.
Defendants argue plaintiff has no cause of action because a review of the jurisprudence which has addressed negligent delay has done so only in the context of rejections or cancellations of policies. Since the policy here was issued, defendants conclude there is no cause of action.
Our review of the cases indicate the particular problem we have before us has not been addressed by the courts of this state. The cases, as defendants point out, involve the agents' or brokers' failure to obtain the insurance, the rejection of the applicant, or the cancellation of a policy. In those instances the critical issue was whether the negligent delay prevented the applicant or insured from obtaining coverage elsewhere which would have prevented their loss of particular policy benefits. See: Thomas v. Life Ins. Co. of Georgia, 55 So.2d 705 (La.1951); Davis & Landry v. Guar. Income Life Ins., 442 So.2d 621 (La. App. 1 Cir.1983); Duke v. Valley Forge Life Ins. Co., 341 So.2d 1366 (La.App. 4 Cir.1977); Brunt v. Standard Life Insurance Co., 259 So.2d 575 (La.App. 1 Cir. 1972); Locke v. Prudence Mutual Casualty Company, 172 So.2d 351 (La.App. 4 Cir.1965); Harding v. Metropolitan Life Ins. Co., 188 So. 177 (Orl.App.1939). However, simply because an issue has not been addressed by the courts does not mean a cause of action does not exist. Persons are liable for acts of commission or omission that cause damage to another if a duty imposed by the relationship of the parties is breached by such act or omission. Smith v. Travelers Ins. Co., 430 So.2d 55 (La.1983); see: LSA-C.C. art. 2315, et seq.; LSA-C.C. art. 2985, et seq.; LSA-C.C. art. 1994, et seq.
In plaintiff's petition she alleges she sustained damage (loss of the insurance proceeds) because of defendants' negligent delay in issuing the policy. Negligence requires a finding that defendants breached a duty to plaintiff and that breach was the legal cause of the damage. In Davis & Landry v. Guar. Income Life Ins., supra, the court stated the insurance company has a duty to act upon an application within a reasonable time and a violation of that duty will subject the company to resultant damages for negligence. Although that case involved the death of the applicant before the policy was approved and issued, we find the holding applicable to these facts as well. Thus, we find plaintiff has stated a cause of action for loss of the insurance proceeds.
The next question presented by defendants' appeal is whether the trial judge erred in finding the defendants' delay in correcting its error constituted negligence. In this regard defendants assert the delay in processing the application was reasonable.
It was stipulated by the parties that MILICO normally processed applications within four to eight weeks, or at the maximum, 56 days. In this case the policy was issued 92 days from the date of application, a delay of 36 days. Such a delay was unreasonable in light of the fact that MILICO sought correction of the error in November 1981, but the error was not corrected until January 1982. Our conclusion that this delay was unreasonable is further supported *456 by the fact that once the mistake was corrected, MILICO issued the policy within ten days. Thus, we find the trial judge did not err in finding the defendants were negligent in their handling of plaintiff's application.
Finally, defendants assert that even if their delay in processing the application was negligent, it was not the cause of plaintiff's loss. In this regard defendants contend the damages sustained by plaintiff were caused solely by the deceased's choice in committing suicide three weeks prior to expiration of the two-year preclusion period.
As to this claim by defendants, the evidence shows that had the error not occurred, or had it been corrected promptly, it was more likely than not the suicide would have occurred after the two-year period excluding suicide expired. Consequently, the cause of plaintiff's loss was not the deceased's choice in committing suicide on January 13, 1984, but defendants' breach of its duty to the insureds to correct its mistake timely. Thus, we find the trial judge did not err in finding defendants' negligence was the cause of plaintiff's injury and casting them in damages for the amount of the policy ($100,000).
Accordingly, the judgment of the trial court is hereby affirmed. Costs are to be paid by appellant.
AFFIRMED.