## DUNNE v. WESTERN NAT. LIFE INS. CO.
### (No. 1257; May 25, 1926; 246 Pac. 246.)

INSURANCE—PAYMENT OF FIRST PREMIUM—ACTION FOR DELAY IN PASSING ON APPLICATION—BURDEN OF PROOF—EXTENSION OF CREDIT.

1. In action by administrator for damages for failure to act within reasonable time upon application by deceased for life insurance, evidence *held* insufficient for jury to show payment of first premium required to put application in force.

2. In action by administrator for damages for failure to act within reasonable time on application for life insurance, where first premium had not been paid as required in application to put insurance in force, burden of proving extension of credit *held* to be on administrator.

*See Headnotes (1) 37 C J p. 403 n. 92, 93. (2) 37 C J p. 417 n. 38.

ERROR to District Court, Fremont County, ROBERT R. ROSE, Judge.

Action by Thomas Dunne, as administrator of the estate of James McDonald, deceased against the Western National Life Insurance Company. There was judgment for defendant on a directed verdict, and plaintiff brings error.

*P. B. Coolidge*, and *Brome* and *Hyde*, for plaintiff in error.

The evidence of Dr. Brantly and the payment of $55.00 by deceased would warrant a jury in finding that deceased applied for the policy and that credit was extended for the premium; also that defendant owed to McDonald the duty of promptly issuing the policy applied for; the action survived; 1 C. J. 174-178; the questions involved in this case were involved in Duffy v. Bankers' Life Ins. Co. (Ia.) 139 N. W. 1087; it is true that Bradley v. Ins. Co., (Ill.) 129 N. E. 171, holds that an action of this kind does not survive, but the decision ignores the common law rule to which we have directed attention; insurance com-

panies are liable for unreasonable delay in transmitting insurance applications; Wilken v. Ins. Co., 99 Nebr. 828; Ins. Co. v. Cameron, (Okla.) 205 Pac. 151; Boyer v. Ins. Co. (Kan.) 121 Pac. 329;

*William E. Mullen,* for defendant in error.

Defendant's motion for a directed verdict was made and sustained on the insufficiency of evidence and that the action did not survive; the application was never approved; the first premium was not paid and no contract was made; Wheelock v. Clark, 21 Wyo. 300; the action, if any ever existed, did not survive; 1 C. J. 339; 5559 C. S.; Wolf v. Wall, 40 O. St. 111; State v. Blake (Wash.) 181 Pac. 685; the common law rule has not been changed in this state; 1 R. C. L. 32; Russell v. Sunbury, 37 O. St. 372; where a right of action is entirely personal and not assignable, it does not survive; Selden v. Bank, (Ill.) 87 N. E. 860; People v. Western Life, (Ill.) 104 N. E. 219; Winston v. Gordon, (Va.) 80 S. E. 756; Ingersoll v. Gourley, (Wash.) 130 Pac. 743; Woodford v. McDaniels, (W. Va.) 81 S. E. 554; Wilkin v. Ins. Company was practically overruled in Meyer v. Ins. Company, (Nebr.) 173 N. W. 578; Insurance Company v. Cameron, also cited, involved a fire application and no question of survival was involved; in Boyer v. State, also cited, the agent had accepted notes which he was trying to sell before forwarding the application, which was for hail insurance. Bradley v. Ins. Co., (Ill.) 129 N. E. 171 is squarely in point; most of the cases relating to the question are discussed in that opinion and clearly distinguished; delay in passing upon an application for insurance is not an acceptance thereof; Insurance Co. v. School Dist. (Ark.) 182 S. W. 547; Additional authorities cited by counsel for plaintiff in error at the hearing do not seem to be in point; Deford v. New York Life Company, 224 Pac. 1049, turned upon the sufficiency of the petition and is not in point on the facts; the other case of Ins. Co. v. Lemmons, (Okla.) 222 Pac. 255, was one wherein a policy had been issued but,

owing to the carelessness of the company or its agents, was not delivered to applicant before his death; it does not apply to the facts in the present case.

BLUME, Justice.

This is an action brought by the administrator of James McDonald, deceased, against the Western National Life Insurance Company, for damages for failure to act upon an application of James McDonald, for a life insurance policy in the sum of $5,000, within a reasonable time. The case was tried to a jury, but at the close of the evidence, the defendant, hereinafter referred to as the company, made a motion for a directed verdict in its favor. This motion was sustained, a verdict was returned in favor of said company, judgment was rendered thereon, and from this judgment the administrator has appealed.

Two questions are argued herein: First, as to whether an action of this nature is one that survives, and second, whether the evidence in the case was such that the jury should have been permitted to pass upon it. The courts seem to be divided on the question as to whether an action for delay to act upon an application for insurance survives, or whether it may be brought at all or not (37 C. J. 379, 380; 32 C. J. 1106), but inasmuch as we think that the case may be disposed of upon the second question argued herein, it is unnecessary for us to consider anything else.

The facts in the case are substantially undisputed. One McLean was, on September 30, 1920 and up to about November 1st of that year, acting as the agent of the company, for the purpose of taking applications for life insurance policies to be issued by that company. On the date first above mentioned, that is to say on September 30, 1920, James McDonald, the decedent, filled out, at the solicitation of said McLean, an application for a life insurance policy of $5,000 in said company. The first year's premium on said policy was the sum of $168.25. Mr. Dunne, the assistant secretary of the company, testified that no application by the company is approved, unless

the company receives its proportion due for the first year's premium, which is forty per cent thereof, the agent receiving sixty per cent. This accords with a provision contained in the application, duly signed by the applicant in this case, which reads as follows:

"I understand and agree that any insurance issued on account of this application will not be in force unless the first payment required thereunder be duly made."

In fact counsel for both sides have submitted this case on the theory that the first year's premium either had to be paid or credit for it had to be extended, and we shall accept that theory for the purposes of this case. A check in the amount of the first year's premium, to-wit for $168.25, was, evidently pursuant to the requirement so contemplated, given by the decedent to McLean on the date the application was made. The check, however, proved to be worthless, was twice presented for payment at the Riverton State Bank, on which the check was drawn, but payment thereon was refused for want of funds. No sum sufficient to pay the face of the check was on deposit in said bank in favor of James McDonald until December 17, 1920, although he had $150 on deposit on October 11, 1920, which, however, was reduced to $50 on November 12, 1920. McLean, the agent, who had been discharged as such by said company about the 1st of November, 1920, testified that when the application for said policy was made, the decedent told him:

"To hold the check until he found out if he would take that much insurance, or if he would cut it down or what he intended to do. I was advised to hold the check until I heard from him."

He further testified that he saw the decedent at a later date, who then advised him that he did not know how much insurance he could carry, and that he wanted Mc-

Lean to hold the check and do nothing further until McLean heard from him again; that he would let him know a few days later; that decedent, however, on that occasion, gave him $55 on account, and said that he would later make up his mind what he would do in regard to paying the remainder of the premium and how large a policy he would take; that decedent did not let him know and that no agreement as to the amount of insurance which decedent would take was ever made. This testimony was corroborated in substantial particulars by the witness Sheehan, and there is nothing in the record to contradict it, unless it be the testimony of Dr. Brantley hereinafter mentioned. The decedent was examined as to his physical condition by Dr. Brantley on October 1, 1920. This examination was sent to the head physician of the company at Cheyenne, and was approved by him on October 4, 1920, "conditionally," that is to say, subject to the approval of the application in other respects. The application, however, was never sent to the offices of the company, but it, together with the $55 heretofore mentioned, was held by the agent McLean until sometime in January, 1921, after the death of James McDonald, which occurred as a result of an accident on January 6, 1921. The agent, McLean, then paid the sum of $55 to the company, and this amount was returned to the administrator of the estate of said decedent.

It is, accordingly, contended by counsel for the company, that the uncontradicted testimony in the case shows that no unconditional application for insurance was ever made out by the decedent or delivered to any agent of the company, and that hence the company cannot be held to have been negligent in failing to act thereon. Counsel for the administrator, however, contend that there are circumstances in the case which refute the force of the foregoing evidence—circumstances of such character so as to make it a question for the jury as to whether or not the testimony given by McLean and Sheehan was true.

They rely chiefly upon the testimony of Dr. Brantley, who testified that a few days after he examined the decedent, McLean stated to him: "He (decedent) paid him $55, but he (McLean) needed it for personal expenses, and would turn the next money he collected from him into the company." Counsel believe that this statement warrants the inference that the application was in fact unconditional; that otherwise McLean would not have treated the money paid as his own, available for his own expenses. There might be some force in counsel's contention, if this testimony stood alone, but taken in connection with the other testimony in the case, it does not reasonably, we think, warrant the inference for which counsel for the administrator contend. McLean was interested in having the application completed. The natural thing for him to do was to take every step toward that end. But he held the application, probably with the full expectation that the decedent would make up his mind what amount of insurance to take. He naturally thought that it would be simply a question of the amount which decedent would take, and his willingness to spend the money already paid would, accordingly, in no manner detract from the force of his other testimony. It is, we think, consistent therewith.

Again, if the inference contended for is warranted, the further inference must also be drawn, that McLean waived the payment of the full amount of the premium; and in order that such waiver might bind the company, it must also appear that McLean had the authority to waive the payment of the proportion of the premium due to the company, which would have been the amount of $67.30. So far as the latter point is concerned, counsel for appellant rely upon the testimony of Mr. Dunne, the assistant secretary of the company, elicited from him upon cross-examination, and which is as follows:

"Q.  Do you mean to tell the jury you are not in the habit of taking anything but cash for the company's first premium on policies of insurance like this one?  A.  Cash or the equivalent.  Q.  What is the equivalent?  You take notes sometimes, don't you?  A.  The agent takes it at his own risk, not the company.  Q.  If the agent took the note, you issue the policy, don't you?  A.  His account is charged.  Q.  His account is charged the net amount due the company on that premium?  A.  Yes.  Q.  But the policy is issued just the same, isn't it?  A.  Yes, sir.''

The most that is shown by the foregoing testimony is that a note might be taken in place of cash, for the amount due for the first year's premium, and that the agent had authority to take such note.  The testimony aforesaid is corroborated to some extent by some of the printed matter in the application, which apparently contemplates that the first year's premium may be paid either in cash or by note.  But no note was taken in the case at bar, and it is not claimed that any was taken.  The foregoing testimony of Mr. Dunne, accordingly, does not show that McLean had authority to extend credit, and no other testimony was adduced to show that fact.  Further, the circumstances in this case indicate, we think, that no credit was intended to be extended by McLean.  The extension of such credit, in the beginning at least, is wholly negatived by the fact that a check for the full amount of the premium was given by the decedent.  If any such credit was intended to be extended, it must have been subsequently, when the cash payment of $55 was made and taken.  But we do not think that the acceptance by McLean of that amount is, under the circumstances, proof of that fact; and there is no other testimony in the record in any manner tending to show it.  That McLean continued to hold the check is a circumstance sufficient, we think, to overcome any inference from the payment of the cash, if any is possible, that credit was extended.  It is said in 37 C. J. 403:

"However the almost-invariable custom of life insurance companies is to make no contract, and to assume no liability to insure the life of any person, until a premium has been paid. Accordingly, where no policy of life insurance has been issued and no premium has been paid, there is a strong presumption that there is no contract and no intention to contract, otherwise than by a policy made and delivered upon a simultaneous payment of the premium."

If, as stated, the presumption is that there is no contract in the absence of the payment of the premium, the presumption must be equally strong, that there was no duty to act upon any application in the absence of such payment. In other words, the burden to prove an extension of credit would be upon the administrator in this case, and this burden has not, we think, been met in such a manner as to warrant the court in submitting that issue to the jury.

In short, the evidence as a whole tends to show, we think, that the testimony of McLean and Sheehan is true. The former, as stated before, was interested in getting an unconditional application from the decedent. It was not to his interest to suppress it. His proportion of the premium would have been $109.50, and he received at most only $55, leaving still $54.50 due him alone. The possible, alternative theory that he held the application, though unconditional, in order to be in better position to force the decedent to pay the balance due, is, under the evidence in this case, too speculative to base any liability of the company thereon. The decedent evidently did not make the slightest efforts to pay any additional sum of money; he took no further steps looking to the completion of his contract. A period of three months elapsed between the signing of the application by the decedent and his accident, and a period of two months intervened between the time of the discharge of McLean from service, and such accident; yet the decedent does not appear to have had

any further communication with McLean, and he did not take the trouble of communicating with the company directly, or of making inquiries in relation of his application. On the whole, the court was right, we think, in directing a verdict in favor of the company.

The judgment of the trial court must accordingly be affirmed, and it is so ordered.

*Affirmed.*

POTTER, C. J., and KIMBALL, J., concur.