870 P.2d 1133

**David H. HILL, Plaintiff–Appellant,**

**v.**

**CHUBB LIFE AMERICAN INSURANCE CO.; Chubb Life America Insurance Co., dba United Life and Accident Insurance Company, Defendant–Appellee.**

**No. 1 CA–CV 91–231.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 31, 1993.

Review Granted April 5, 1994.

Randolph G. Bachrach, Scottsdale, for plaintiff-appellant.

Stockton & Hing by Robert Ong Hing and Thomas F. Ames, Scottsdale, for defendant-appellee.

## OPINION

JACOBSON, Judge.

The key question in this appeal is whether appellee Chubb Life America Insurance Co. ("Chubb Life") owed appellant David H. Hill a legal duty to process his application for disability and life insurance within a reasonable period of time when it had not received payment of a premium. Hill appeals from

the trial court's entry of summary judgment on all five counts of his complaint, but focuses only on his claim for negligent delay in the processing of his application. Because we find no legal duty, we affirm.

## FACTS AND PROCEDURAL HISTORY

■ In reviewing summary judgment, we view the evidence in the light most favorable to the non-moving party, giving the benefit of all favorable inferences that may be reasonably drawn. *Schroeder v. Hudgins,* 142 Ariz. 395, 396–97, 690 P.2d 114, 115–16 (App.1984).

In August 1986 Hill notified his insurance agent, Leo Sroka, that he desired to obtain additional disability and life insurance coverage through his existing insurance carrier Chubb Life. Leo Sroka and his wife Marilyn were general agents.[1] In late September, Hill completed an application for additional insurance and Sroka submitted it to Chubb Life. The application agreement signed by Hill provided as follows:

> The insurance applied for will begin subject to the terms and conditions of the policy applied for only when: (1) The policy is issued and delivered to the Owner; and (2) The first premium is paid in full during the life of all persons proposed for insurance; and (3) The state of health of all of these persons has not changed since the date below.

The policy had other general provisions stating that:

> (1) The agent has no authority to make, modify, alter or discharge any policy or the terms of this or any other agreement with the Company.
>
> * * * * * *
>
> (3) The Owner will be informed if the application has been accepted within 60 days or be given the reason for the delay.

A medical examination required for obtaining the additional insurance was conducted at Hill's office on October 2, 1986. Sroka had told Hill that it would take no longer than 6 to 8 weeks to approve the policy. Without Hill's knowledge, though, Sroka delayed until October 29, 1986, in dating the application and mailing it to Chubb Life. The reasons for this delay are not indicated in the record.[2]

Hill did not submit a premium when he filled out the application or at any time thereafter. Hill previously made premium payments for his Chubb Life policies by preauthorized automatic checking. He indicated on the application form that he would use that method of making premium payments for the new policy. It is undisputed, though, that no premium payment was ever taken from his account for this policy; neither did he authorize his bank to charge his account for premiums.

On December 4, 1986, Hill learned that Chubb Life needed him to complete a "Financial Supplement to Application." This additional information was required by Chubb Life whenever an applicant would have disability insurance benefits totalling more than $4,000 per month. Hill completed the form on December 10, 1986, and it was received by Chubb Life on December 18, 1986.

Hill had provided Chubb Life with the names of two doctors who had treated him, Dr. Thompson and Dr. Adickman. Chubb Life required attending physician statements and medical records before approving an application. It obtained Dr. Thompson's records by December 18, 1986. Because these records indicated that Hill engaged in motor car racing, Chubb Life required that Hill complete a "Hazardous Activity Supplement." Hill completed this form on January 9, 1987, and Chubb received it on January 20, 1987.

Chubb Life's attempt to obtain the medical records from Dr. Adickman did not go as smoothly. The first request for the records was made on November 26, 1986, but Chubb Life did not receive the records until April

---

1. As general insurance brokers, the Srokas are considered agents of Hill in obtaining or procuring insurance from Chubb Life. *See Lewis v. Michigan Millers Mut. Ins. Co.,* 228 A.2d 803 (Conn.1967). The liability of the Srokas, if any, is not before us in this appeal.

2. At oral argument in this court, it was suggested that the delay was due to Sroka waiting for the medical report of the October 2 examination before processing the application.

10, 1987. The parties dispute whether the difficulty in obtaining the records lay with the doctor's office or with Sroka. It is undisputed, though, that Hill was never informed that there was a problem with obtaining these medical records. On the several occasions that Hill expressed concern to Sroka about the length of time it ·was taking to obtain approval of his new policy, Sroka advised Hill not to worry and that the policy would be approved.

Upon receiving the Adickman medical records on April 10, 1987, Chubb Life promptly obtained the required approval of the application on April 15, 1987, from its reinsurer, Lincoln National Life Insurance Company. Meanwhile, Hill suffered a debilitating stroke on April 12, 1987. Just two days prior to having the stroke, Hill had met with Sroka and had inquired again as to the status of his application. According to Hill, Sroka told him at that time that the policies had already been approved.

Chubb Life mailed the policy to Sroka on April 21, 1987. Sroka, who had been notified by Hill's fiancee that he had suffered the stroke, did not deliver the policy, and delayed in discussing the matter with them. Sroka eventually met with Hill and his fiancee in early May 1987. According to Hill, Sroka was belligerent and hostile at this meeting and refused to confirm that the policy was in force. However, Sroka supposedly informed them that he would try to sneak the policies through, but did not inform them that the policies had already been issued and delivered to him. In fact, Sroka had already informed Chubb Life that Hill had suffered the stroke, and Sroka had returned the policies to Chubb Life where they had been canceled.

Hill was incapacitated by his stroke for approximately one year. More than a year after his period of incapacity ended, Hill filed a five-count complaint against Chubb Life alleging: (1) breach of the covenant of good faith and fair dealing; (2) fraud; (3) violation of A.R.S. §§ 20–441 and 20–443(1) and (5); (4) negligent delay in processing an insurance application; and (5) equitable estoppel and waiver. Hill also requested that punitive damages be awarded.

Hill and Chubb Life filed cross-motions for summary judgment. The trial court denied Hill's motion and granted Chubb Life's motion on all claims. The trial court also awarded Chubb Life attorney's fees in the amount of $934.50, apparently as sanctions pursuant to Rule 11, Arizona Rules of Civil Procedure, for having to defend Hill's statutory violation claim, which it found was barred by the one-year statute of limitations, and his request for punitive damages. Hill timely appealed.

### DISCUSSION

The basic question raised by the trial court's judgment is whether a tort duty arises on the part of an insurer to not unreasonably delay the acceptance or rejection of an application for insurance, where the insurer has received no premium in connection with that application.

 A cause of action in tort cannot exist unless the defendant owes a duty to the plaintiff to use a standard of care to prevent injury to the plaintiff. · *Ontiveros v. Borak,* 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). The issue whether a duty exists is one of law, not fact. *Beach v. City of Phoenix,* 136 Ariz. 601, 604, 667 P.2d 1316, 1319 (1983). The dissent mischaracterizes the issue before us as one of material fact, which would preclude summary judgment. However, factual issues regarding whether Chubb Life acted reasonably under the circumstances or whether Hill was misled are irrelevant if no duty exists as a matter of law, because even a negligent defendant cannot be liable if it owes no duty to a plaintiff. *See Markowitz v. Arizona Parks Bd.,* 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985).

Both parties rely upon the case of *Continental Life & Accident Co. v. Songer,* 124 Ariz. 294, 603 P.2d 921 (App.1979), in which this court, for the first time, recognized the tort theory of liability for "negligent delay" by an insurance company in the processing of an application. Because this case of first impression dealt at length with the competing theories as to whether the court should adopt this tort liability theory, language in that opinion can be found to support both

parties' positions. However, in *Songer*, a premium had in fact been submitted with the application; the court's ruling thus must be read with this factual predicate in mind. *Songer* did not address whether a duty to process an application in a reasonable time would arise in the absence of the insurer receiving a premium with the application.

Therefore, to resolve this issue, it is helpful to examine the competing reasons why liability or non-liability should be adopted. Those cases that reject both a contractual and tort liability arising from an insurer's actions in processing an application have done so on the legal theory that an application for insurance is merely an offer by the insured that the insurance company has no legal duty to accept. "Therefore mere delay on the part of the company in passing upon the application cannot be construed as an acceptance and will not support either an action for breach of contract or one sounding in tort." *Usher v. Allstate Ins. Co.*, 300 Minn. 52, 218 N.W.2d 201 (1974).

■ What compels rejection of a duty in the absence of a contractual obligation by most courts is illustrated by the case of *Gorham v. Peerless Life Ins. Co.*, 368 Mich. 335, 118 N.W.2d 306 (1962). After acknowledging the general rule that no inference or presumption of acceptance of a contract can be drawn from mere delay in processing an insurance application, the *Gorham* court stated:

> But there appears to be a distinction drawn where the applicant paid the initial premium at the time the application was signed. Delay in acting on the application, *along with retention of the premium*, under these circumstances is inconsistent with a rejection of risk.

118 N.W.2d at 309 (emphasis added).

Likewise, as was noted by a Kansas court:

> It [the insurer] could not lawfully retain the premium and hold the application in abeyance. The retention of the premium and its failure to reject the application, and its holding of it while it took time to adjust a matter of concern only to itself, were tantamount to an acceptance of the appli-

cation and an agreement to issue the policy.

*Preferred Accident Ins. Co. v. Stone*, 61 Kan. 48, 58 P. 986, 987 (1899). In these cases, as with contract formation, the *quid pro quo* for finding the existence of a duty, the breach of which gives rise to tort liability, is founded upon the retention by the insurer of a premium submitted with the application. When a premium is retained, the following reasoning applies:

> Since an unreasonable delay in retention of an unearned premium might deprive an insurable applicant of an opportunity to apply elsewhere for and to procure life insurance, there is a remedy in the form of an action in tort for an unnecessary and negligent delay in performing the duty of acting on the application within a reasonable time if, by such delay, an insurable applicant is prevented from procuring insurance, thus causing a loss.

*Thomas v. Life Ins. Co.*, 219 La. 1099, 55 So.2d 705 (1951). Appleman also supports the creation of a duty to process an application within a reasonable time when a premium accompanies the application:

> Principles of fair dealing would require that where the applicant has paid the first premium for the protection which he desires that the insurer act upon the application within a reasonable time.

John A. Appleman, 12A *Insurance Law and Practice*, § 7216 at 110 (1981). This court adopted that rationale in *Songer*, when we held that an insurer's duty "to deal fairly with its insured,"

> should be imposed in situations where, as here, there may be some question as to the existence of a contract for insurance and the insurer unreasonably delays in processing the application *after having accepted the payment of a premium.*

124 Ariz. at 302, 603 P.2d at 929 (emphasis added). In *Songer*, this good faith duty arose from the existence of "an implied or quasi-contract between the applicant and the insurer that the latter will act upon the application within a reasonable time." *Id.* at 304, 603 P.2d at 931. We do not believe, however, that such a relationship arises in the absence of a premium payment with the application.

The parties have not cited, nor has our independent research disclosed, any cases in which either contractual or tort liability was imposed in the absence of a premium accompanying the application. In fact, in the few cases we have found in which the tort of negligent delay was asserted but no premium had been paid during the time the insurer was processing the application, courts have found no duty on the part of the insurer to act. For example, in a Delaware case, an application for disability income insurance had provided that the insured would not be liable for insurance coverage until the policy was issued and the full first policy premium was paid while the applicant was in good health. The applicant was injured before the application was processed, and sought to hold the insurer liable for negligent delay in not processing the application within a reasonable time. He had not paid a premium with his application, nor had he proffered the premium prior to his injury. In finding that the insurer had not owed the applicant a duty to process his application within a reasonable time, the Delaware Supreme Court reasoned as follows:

> The cases allowing recovery for violation of the duty to act upon an application for insurance within a reasonable time generally involve payment of the first premium with the application.... The rationale is that the insurance company has received consideration and has a duty to act promptly; that acting otherwise would prejudice the defendant because he would believe he is insured and not seek insurance elsewhere.... Such is not the situation here. Because no premium had been paid by the plaintiff under the explicit terms of the application, neither USF & G nor Vertex had a duty to act within a time certain.

*Megee v. United States Fidelity & Guaranty Co.*, 391 A.2d 189, 192 (Del.1978) (citations omitted).

Similarly, in a federal district court decision based on Michigan law, a life insurance applicant died before his application was processed, and he had paid no premium prior to his death. The application provided that "the insurance applied for shall not take effect unless and until this application is approved by the Company at its Home Office and a full first premium according to the Company's published rates in use on this date has been paid and the policy delivered and accepted by the Owner while the Proposed Insured is alive and in good health." *Salter v. Security Benefit Life Ins. Co.*, 235 F.Supp. 901, 903 (E.D.Mich.1964). After rejecting a claim for breach of contract in that case, the court also concluded that the nonpayment of a premium precluded tort liability on the part of the insurer. The federal district court stated:

> We find the tort theory to be subject to as fatal an infirmity as the contract theory. Plaintiff has cited no case where a defendant insurance company has been held liable in a situation even remotely comparable to that presented here. The concern of negligence embraces that of the existence of some kind of duty. There is nothing alleged in the Complaint or in the proposed Amended Complaint which, by any stretch of the imagination, could imply or impose a duty which the defendant here breached. The fact of nonpayment of premium is equally controlling as to this theory. The cases which have allowed damages in tort for unreasonable delay (and there appear to be none from Michigan) have emphasized that the basis for such recovery is that the insurance company retained the premium. By virtue of having accepted an applicant's money, the insurance company owed a duty to act within a reasonable time.

*Id.* at 903–04. *See also Duke v. Valley Forge Life Ins. Co.*, 341 So.2d 1366, 1369 n. 3 (La.App.1977) (insurer had "no duty to commence processing the application until it was accompanied by the proper check"); *Antoine v. Sentry Life Ins. Co.*, 352 So.2d 768, 770 (La.App.1977) (prerequisite for tort action for negligent delay is payment of premium); *Metropolitan Life Ins. Co. v. Brady*, 95 Ind. App. 564, 174 N.E. 99 (1931); *Dunne v. Western Nat'l Life Ins. Co.*, 35 Wyo. 59, 246 P. 246 (1926).

 The legal concept that generally an offeree has no obligation to respond to an unsolicited offer is still valid law. Only when

the offer is accompanied by consideration that is retained by the offeree are duties to respond imposed, under either theories of contract or tort arising out of quasi-contract, as in *Songer.* Likewise, in the absence of a premium, Hill was completely free, prior to Chubb Life issuing a policy, to seek insurance coverage elsewhere. Whether Hill was induced not to do so by representations of his agent, Sroka, is not material to the question of Chubb Life's liability to Hill as Hill's agent. We therefore hold in this case that, because Hill failed to pay or tender a premium to Chubb Life at any time while the application was being processed, Chubb Life did not owe a duty to process the application within a reasonable period of time.

■ Although Chubb Life did not receive a premium payment from Hill, Hill argues that, because he had specified in the insurance application that premium payments were to be made by preauthorized automatic checking, this constituted a "payment." Hill has cited no authority for this proposition and we are not persuaded that the mere specification of a method of payment was the equivalent of actual payment of the first premium. Hill checked the box on the application for insurance choosing a method of premium payment marked "P.A.C." (preauthorized automatic checking). There is no contention that this could have constituted a sufficient authorization for Hill's bank to pay any demand by Chubb Life for payment premiums. Moreover, in absence of the issuance of a policy, neither Chubb Life nor Sroka were authorized to debit Hill's bank account. In designating the method of payment, Hill did not absolve himself of responsibility for making sure that the first premium payment was actually withdrawn from his account in order to impose a duty on Chubb Life not to negligently delay the processing of his application.

■ Hill also suggests that we need not reach the issue of negligent delay in this case because the sixty-day time provision in the application required the insurer to inform the applicant "if the application has been accepted within 60 days or be given the reason for the delay." We find no merit to this argument either. Hill's failure to pay the first premium denies him the benefit of enforcing this contractually imposed time provision just as surely as it denies him a corresponding duty in tort on the part of the insured to process the application within a "reasonable" period of time.[3]

■ Hill further argues that summary judgment was granted prematurely because the record demonstrates that he had not completed discovery in the case. This argument provides no basis for reversal. Hill made no motion to postpone the ruling on the motion to allow him to complete discovery as provided for in Rule 56(f) of the Arizona Rules of Civil Procedure. Moreover, Hill's argument indicates that the discovery he wanted to conduct went to the issue of negligence, not duty. He made no claim that the discovery he sought might show that the premium payment had been made.

■ Having discussed and rejected all of Hill's contentions concerning his claim for negligent delay, we now turn to the only other issue Hill raised in his opening brief: whether the trial court abused its discretion in imposing sanctions against Hill pursuant to Rule 11, Arizona Rules of Civil Procedure, for his statutory violation claim and his request for punitive damages. We agree with the trial court that Chubb Life was entitled to summary judgment on these claims, and we find no abuse of discretion in imposing Rule 11 sanctions. Rule 11 is violated when "the party or counsel knew, or should have known by such investigation of fact and law as was reasonable and feasible under all the circumstances, that the claim or defense was insubstantial, groundless, frivolous, or otherwise unjustified" or by "the filing of plead-

---

3. We believe the sixty-day provision constitutes nothing more than a gratuitous promise by Chubb Life, in the absence of a premium payment by Hill as consideration for that promise. Although Hill argues he detrimentally relied on that promise by not seeking coverage elsewhere, we find no support, either implicitly or explicitly in the insurance application, that Hill was induced by Chubb Life to forebear from seeking alternative or additional coverage during the sixty-day period. In fact, as previously noted, such inducement, if any, came from Hill's agent, Sroka, rather than Chubb Life.

44

ings for an improper purpose such as those intended to harass, coerce, extort, or delay." *Boone v. Superior Court,* 145 Ariz. 235, 241–42, 700 P.2d 1335, 1341–42 (1985).

 The record contains no evidence of conduct by Chubb Life that would support a request for punitive damages. In fact, the evidence is clear that Chubb Life acted promptly in processing the application after receiving the necessary medical information from Hill's doctor. The test to determine whether Rule 11 has been violated is not one of subjective good faith but an objective one of reasonableness. *Wright v. Hills,* 161 Ariz. 583, 589, 780 P.2d 416, 422 (App.1989). We do not find it objectively reasonable to believe that any of Chubb Life's conduct would support a punitive damage claim, particularly with regard to the cause of action Hill and his counsel chose to file.

 Regarding the statutory violation claim, we agree with the trial court's conclusion that Hill had sufficient knowledge of wrongful conduct on Sroka's part that the one-year statute of limitations began to run when Hill's disability ended and that the suit filed more than a year later was barred. We do not find that it was reasonable to think that Hill had to know the insurance policy had been approved and canceled before his statutory violation claim would arise.

 We do not consider arguments concerning any of the other dismissed claims. Hill made no arguments concerning these claims until he filed his reply brief. The failure to make arguments in the opening brief precludes raising them in the reply brief. *Amfac Distrib. Corp. v. J.B. Contractors, Inc.,* 146 Ariz. 19, 27, 703 P.2d 566, 574 (App.1985).

 Chubb Life seeks attorneys' fees on appeal pursuant to A.R.S. § 12–341.01, for a claim arising out of contract, pursuant to Rule 11, Arizona Rules of Civil Procedure. At oral argument in this court, Hill's counsel conceded that his complaint in superior court was founded upon contract. Under these circumstances, the right to recover attorneys' fees "arising out of contract" exists. *See Lacer v. Navajo County,* 141 Ariz. 392, 687 P.2d 400 (App.1984) (prevailing party award-ed fees when judgment based on absence of contract).

Chubb Life is granted its attorneys' fees on appeal and is directed to comply with Rule 21, Arizona Rules of Civil Appellate Procedure.

For the foregoing reasons, we affirm the trial court's judgment.

EHRLICH, P.J., concurs.

CLABORNE, Judge, dissenting:

I respectfully dissent. We must keep in mind that this is an appeal from the granting of a Motion for Summary Judgment. If there is a material fact which can be fairly disputed, then summary judgment should not be granted. *See Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990).

I believe it is absolutely wrong that the duty of processing an application for disability and life insurance within a reasonable time period should depend upon the pre-payment of a premium. This is especially troubling where the insurer provides the time period in which to process the application on the application form itself. Although I agree with the majority that no appellate court has yet held an insurer liable absent a premium payment, it may be nothing more than appellate judges suffering from a case of misocainea!

I am persuaded by the view expressed in *George James Couch on Insurance 2d.,* Section 7:28 (Rev. ed. 1984). The clear implication in Couch is that the payment of a premium *is just one of several* circumstances which control the reasonableness of the insurer's conduct. Reasonableness in this context is a jury question. *See Continental Life & Acc. Co. v. Songer,* 124 Ariz. 294, 303, 603 P.2d 921, 930 (App.1949). The other facts beside the payment of a premium, according to Couch, are the amount of delay in acting upon the application; the insurability of the applicant upon the submission of the application; and the applicant's refraining from securing other like insurance because of the delay. *Id.* Common sense also dictates that when the insurer never demands a premium payment, prior dealings between the applicant and the insurer concerning that pay-

ment would be material in determining the issue of duty.

Not only did *Songer* say that liability of the insurer is not dependant "on a finding of a contract ...," but it also indicated that which the majority refuses to acknowledge—the insurance industry is imbued with public interest. *Id.* at 304, 603 P.2d at 931.

Finally, the general policy of tort law protects an applicant who is misled by the insurer and fails to obtain insurance from another source. The record indicates that there is sufficient evidence of this fact to prevent summary judgment.

I would reverse the trial court and remand the case for further discovery and a finding by a jury, not a judge.