894 P.2d 701

**David H. HILL, Plaintiff–Appellant,**

v.

**CHUBB LIFE AMERICAN INSURANCE CO.; Chubb Life America Insurance Co. dba United Life and Accident Insurance Company, Defendant–Appellee.**

No. CV–93–0413–PR.

Supreme Court of Arizona,
En Banc.

April 20, 1995.

Randolph G. Bachrach, Scottsdale and Arnett & Arnett by Wayne C. Arnett, Tempe, for plaintiff-appellant.

Stockton & Hing by Robert Ong Hing, Scottsdale and Ulrich & Kessler, P.C. by Thomas F. Ames, Phoenix, for defendant-appellee.

Ulrich & Kessler, P.C. by Paul G. Ulrich, William H. Anger, and Richard E. Barnsback, and Phillip E. Stano, Washington, DC, for amicus curiae American Council of Life Ins.

## OPINION

FELDMAN, Chief Justice.

David H. Hill ("Hill") petitioned for review of a court of appeals' opinion affirming summary judgment in favor of Defendant Chubb Life American Insurance Company ("Chubb Life" or "Chubb"). The trial court granted Chubb Life summary judgment on Hill's claims that Chubb failed to timely process his application for disability insurance. The court of appeals affirmed in a divided opinion, the majority holding that Chubb had no duty to process the application because Hill did not tender a premium payment. *Hill v. Chubb Life American Ins. Co.*, 178 Ariz. 37, 870 P.2d 1133 (App.1993). We granted review of the following issues to consider the nature of a life and disability carrier's duty to process insurance applications:

1. Whether an insurance company has a legal duty to process an application for insurance within a reasonable period of time, or, within the time agreed to in the application agreement, when it did not ask for or receive the payment of a premium.

2. Whether the legal duty to act within a reasonable period of time is dependent upon the payment of a premium, or whether the legal duty arises from the relationship of the parties.

We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24. Because we conclude that genuine issues of material fact exist, we vacate the court of appeals' opinion and reverse the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

■ We view the facts in a light most favorable to Hill, the party against whom summary judgment was granted. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). Hill was a successful dentist who maintained life and disability coverage with Chubb Life. In August 1986 he told Chubb's agents, Marilyn and Leo Sroka [1] ("Sroka"), that he wanted to increase his disability coverage. Hill completed an application and gave it to Sroka in late September. In accord with Chubb Life's rules,[2] Hill did not include a premium with the application. Instead, as with his existing policies, he indicated he would pay his premiums by automatic deductions from his bank account. The application contained the following clause that is the focus of this appeal:

> The [applicant] will be informed if the application has been accepted within 60 days or be given the reason for the delay.

Because Chubb refused to issue temporary coverage on such disability policies, this clause presumably attracted consumers because it held out the prospect of prompt coverage or denial within a definite period. *See generally* JEAN AND JOHN A. APPLEMAN, 12A INSURANCE LAW AND PRACTICE § 7237, at 188 (1981) (discussing the benefits of temporary insurance binders to insurance applicants).

On October 2, Hill underwent the physical examination that Chubb Life required. Unknown to Hill, Sroka did not sign and mail the application to Chubb until October 29. Chubb Life requested and Hill submitted a "Financial Supplement to Application" on December 10. Chubb also requested records from two of Hill's regular physicians. Hill gave consent and Chubb soon received records from one showing that Hill had once

been licensed to drive race cars. As a result, Chubb asked Hill to submit a "Hazardous Activity Supplement." Hill did so on January 9, 1987.

With Hill's consent, Chubb Life asked for records from the second doctor on November 26, 1986 but did not receive them until April 10, 1987—four and one-half months later. In the interim, Chubb stopped processing Hill's application. There is conflicting evidence whether Chubb, Sroka, or the doctor's office caused the records delay. It is undisputed, however, that Chubb never told Hill about the delay or asked him to help obtain the records. Nor did Chubb tell Hill that it stopped processing his application. In fact, when Hill repeatedly inquired about the holdup in getting the policy, Sroka told him not to worry and assured him the policy would be approved.

On April 10, the same day that Chubb finally received the second set of medical records, Hill again asked Sroka about his application. Sroka said the policies had already been approved. In fact, Chubb did not approve and mail the policies to Sroka until April 21, more than six months after Hill applied. In the meantime, however, Hill suffered a serious stroke on April 12.

When Hill's fiancée told Sroka about the stroke, Sroka became evasive and avoided discussing the policies. When Hill and Sroka met in May 1987, Sroka would not say if the policies were in effect but said he would try to sneak them through in any event. In reality, Sroka received the policies and, after learning of Hill's stroke, returned them to Chubb Life, which immediately "canceled" them.[3]

In February 1990, Hill filed a complaint against Chubb Life and Sroka.[4] Citing the application's sixty-day notification clause and

---

**1.** The court of appeals erroneously stated that the Srokas were general insurance brokers and thus agents of Hill, not Chubb Life. *Hill,* 178 Ariz. at 39 n. 1, 870 P.2d at 1135 n. 1. In fact, however, Chubb Life admitted in its answer that the Srokas were *its* agents.

**2.** Chubb Life would not accept advance premiums with applications for disability coverage exceeding $2,500 per month. Hill applied for coverage of $3,000 per month.

**3.** It is now undisputed that the policy never went into effect. Although Chubb Life approved Hill's application, Chubb never deducted a premium from Hill's account and receipt of a premium was a stated condition to the policy's effectiveness.

**4.** Hill later dismissed his claims against Sroka.

his stroke more than sixty days after applying, Hill claimed that he was damaged by Chubb's delay in processing his application. Both sides moved for summary judgment. The trial court granted summary judgment to Chubb Life "on all points raised in its motion" and denied Hill's cross motion. The court of appeals affirmed, finding the lack of a premium payment fatal to both Hill's contract and tort theories. *Hill,* 178 Ariz. at 42–43, 870 P.2d at 1138–39.

## CONTRACTUAL DUTY AND THE SIXTY–DAY CLAUSE

■ Much of the oral argument before this court focused on whether the sixty-day clause imposed contractual duties on Chubb Life. But in answering a question from the court, Hill candidly conceded at that argument that although he repeatedly referred to the sixty-day clause in his complaint, he did not plead it as an enforceable contract that Chubb breached. Rather, the complaint was styled as a tort action for negligently processing the application. Thus, before we can consider whether the application agreement's sixty-day clause is contractually enforceable in the absence of a premium, we must first decide whether a contract theory is properly before this court.

### A. Trial by Implied Consent

Notwithstanding Hill's failure to state a contract claim in his complaint, we believe that the trial court reached and the court of appeals considered the contract issue and that review of a contract theory by this court is therefore appropriate. Ariz.R.Civ.P. 15(b) provides that:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues.

Courts interpret Rule 15(b) liberally "to promote the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel." *Brandon v. Holt,* 469 U.S. 464, 471 n. 19, 105 S.Ct. 873, 877 n. 19, 83 L.Ed.2d 878 (1985); *accord, Hanshaw v. City of Huntington,* 456 S.E.2d 445, 448, 1995 WL 69019, at *3 (W.Va. Feb. 16, 1995).

To determine whether an issue has been tried under Rule 15, "no general rule can be laid down. Each case depends upon the facts as shown by the record of that particular case." *Collison v. International Ins. Co.,* 58 Ariz. 156, 162, 118 P.2d 445, 447 (1941). However, if the pleadings "present affirmatively certain [other] issues ... there must be some affirmative showing in the record" that the unpleaded, disputed issue was reached. *Id.* In *Collison,* for example, we concluded that an unpleaded issue was tried under Rule 15's predecessor because the record showed that the defendant was aware of the issue but did not object when the court considered it. *Id.*

We bear these principles in mind as we examine the record to determine whether Chubb Life impliedly consented to reaching the merits of the contract claim.[5] We con-

---

5. We also recognize that the difference "between tort and contract liability has become an increasingly difficult distinction to make." *Barmat v. John and Jane Doe Partners A–D,* 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 92, at 655 (5th ed. 1984)). This is especially true in cases involving insurance contracts. *See Insurance Co. of N. Am. v. Santa Cruz,* 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990) (noting that an action may lie in either tort or contract for the breach of a duty rooted in an insurance contract). Indeed, courts and commentators have struggled with whether liability for delay in processing an insurance application sounds in tort or in contract. *Compare Peddicord v. Pru-*

*dential Ins. Co.,* 498 P.2d 1388, 1389 (Okla.1972) (holding that such claims "state an action sounding more in contract than in tort") *and Carney v. Lone Star Life Ins. Co.,* 540 So.2d 415, 418 (La. Ct.App.1989) (stating that "it is well settled that an insurance company is under a duty to act upon an application within a reasonable time and that violation of that duty amounts to negligence"). *See generally* Andrea G. Nadel, Annotation, *Liability of Insurer for Damages Resulting from Delay in Passing Upon Application for Health Insurance,* 18 A.L.R.4th 1115, 1120 (1982 & Supp.1994) (noting that courts have recognized both tort and contract claims and urging plaintiffs' counsel to plead each theory). Dili-

clude that the record affirmatively shows that contractual liability based on the sixty-day clause was at issue and argued by the parties in both the trial court and the court of appeals, despite the fact that Hill's complaint failed to make a short and plain statement of such a legal theory.[6]

For example, in his response to Chubb's motion for summary judgment, Hill plainly said that there had been a *"breach of the express sixty-day requirement"* and that Chubb's *"breach of its own contract has resulted in egregious injury* to Plaintiff." Plaintiff's Response to Defendant Chubb's Motion for Summary Judgment at 6 (emphasis added). And in his cross-motion for summary judgment, Hill said that Chubb "violated its basic *duties under . . . the contract* by failing to advise Plaintiff of the reasons for delay." Reply in Support of Plaintiff's Cross–Motion for Partial Summary Judgment at 12 (emphasis added). Far from objecting that Hill had not pleaded a contract claim, Chubb Life responded to the merits of what it called Hill's contractual "fall back position" that Chubb violated the sixty-day clause. Reply in Support of Defendant Chubb Life's Motion for Summary Judgment at 5.

Although the discussion also focused on Hill's related negligent delay claim, the summary judgment hearing similarly shows that the parties and the judge recognized the contract issue. Hill argued that Chubb "breached [its] duty under [its] application to tell him within sixty days" if there was a delay in placing the coverage. Reporter's Transcript ("R.T.") at 17. Chubb again did not object that Hill had not pleaded a contract claim, instead urging and apparently convincing the trial judge [7] that "even if we have to enforce [the sixty-day clause] strictly," it had complied by asking Hill to complete the supplemental forms within the sixty-day period. R.T. at 21–22. These and other references show that the parties reached and that the trial judge ruled on the contract issue. *See Collison*, 58 Ariz. at 162, 118 P.2d at 447.

The complaint alleged the facts relevant to such a claim, including an allegation of "written and oral promises." All that was missing was the correct use of the magic legal words "breach of contract" in the section setting forth legal theories. Significantly, at no point before the trial court, the court of appeals, or this court did Chubb Life object that Hill had not raised contractual liability. This, therefore, is not a case of ambushing a litigant with a new issue. *Cf. Fortmeyer v. Summit Bank*, 565 N.E.2d 1118, 1120–21 (Ind.Ct.App.1991) (affirming plaintiff's summary judgment, rejecting a defendant's Rule 15(b) claim that its answer raised a triable defense because the record did not show that the plaintiff or court had notice of the defense). Indeed, Chubb did not just refrain from objecting—it argued the merits of contract liability at every stage of this case.[8]

---

gent counsel should, of course, plead all appropriate theories that are well grounded in fact and law. Ariz.R.Civ.P. 11(a). But because of the unsettled nature of this area of law, and because the most prominent Arizona case on this subject was decided on a negligence theory, *see Continental Life & Acc. Co. v. Songer*, 124 Ariz. 294, 603 P.2d 921 (App.1979), it is arguably understandable that Hill's complaint focused on tort liability.

**6.** Hill did, however, plead equitable estoppel and breach of the contractual covenant of good faith. Nevertheless, Hill's complaint—filed by trial counsel—was far from the model of a "short and plain statement of the claim showing that the pleader is entitled to relief." Ariz.R.Civ.P. 8(a)(2). The parties and the interests of justice would be better served if counsel refrained from scattergun complaints and concentrated instead on concisely stating the nature of their claims. As we said long ago: "It is unfortunate that counsel for plaintiffs could not frame his complaint in simple language and thereby avoid expense and time-consuming effort on the part of court and counsel." *Gilliland v. Rodriquez*, 77 Ariz. 163, 166, 268 P.2d 334, 336 (1954).

**7.** The concise basis of the trial judge's ruling is unclear because she granted summary judgment by a short minute entry. The parties made contract arguments, however, and from the record it appears that the judge believed Chubb complied with the sixty-day clause because it requested supplemental forms within that period and acted promptly after receiving the second medical records.

**8.** For example, in its court of appeals' brief Chubb said, "Plaintiff argues that Chubb Life *breached the terms of the application by failing to advise him of the status of his application within the 60–day period . . .* Chubb Life fully complied with the . . . Agreement, whether or not it had a

The court of appeals obviously believed Hill raised the contract issue ·because, although noting that the "basic question" involved tort duty, that court squarely addressed the contract claim in its opinion. *Hill,* 178 Ariz. at 40, 43, 870 P.2d at 1136, 1139 ("Hill's failure to pay the first premium denies him the benefit of enforcing this contractually imposed time provision just as surely as it denies him a corresponding duty in tort...."). *See Lebron v. National Railroad Passenger Corp.,* —— U.S. ——, ——, 115 S.Ct. 961, 965, 130 L.Ed.2d 902 (1995) (reaching disputed claim, noting that "even if this *were* a claim not raised ... below, we would ordinarily feel free to address it, since it was addressed by the court below.").

Reference to other Arizona cases strengthens our Rule 15(b) analysis. For example, in *Dietz v. Waller,* 141 Ariz. 107, 685 P.2d 744 (1984), we addressed a Rule 15(b) argument after a directed verdict for the defendant-seller in a products liability case. The plaintiffs claimed they should have been allowed to take a negligent repair claim to the jury, even though the complaint stated only strict liability theories. We rejected that implied consent argument, noting that "terms such as 'duty of care,' 'carelessness,' and 'negligence' were noticeably absent from the trial record and the subsequent ... hearings on directing a verdict." *Id.* at 112, 685 P.2d at 749. But here, by contrast, terms like "contract," "agreement," "breach," and "consideration" litter the record.

Similarly, in *Thomas v. Goudreault,* 163 Ariz. 159, 786 P.2d 1010 (App.1989), the complaint was styled as a contract action but the trial court's instructions allowed the jury to award tort damages. On appeal, the defendant argued that this was improper because the complaint did not state a tort claim. But after considering the record, the court concluded that a tort claim had been tried by implication under Rule 15(b), noting that:

> It is ... clear from the discussions between court and counsel concerning motions for directed verdict that the [plaintiffs] sought damages in tort.... In de-

termining whether a tort or contract claim has been pled, the court must look to the substance of the allegations, not the labels attached to them.

*Id.* at 163–64, 786 P.2d at 1014–15. As noted, here too the summary judgment motions and hearing indicate that contractual liability based on the sixty-day clause was at issue, even if Hill did not concisely label it as such. *See Barker v. Huang,* 610 A.2d 1341, 1346–47 (Del.1992) (finding Rule 15(b) satisfied and reversing summary judgment where plaintiff's affidavit opposing defendant's motion "fairly stated a [valid, unpleaded] claim."); *Reichelt v. Johns–Manville Corp.,* 107 Wash.2d 761, 733 P.2d 530, 533–34 (1987) (reversing summary judgment on grounds that triable claims were raised under Rule 15(b) where defendant addressed them in reply to plaintiff's summary judgment opposition and parties argued the claims at the summary judgment hearing).

Nor does Hill's failure to amend his complaint make Rule 15(b) inapplicable. The rule itself says that a party's "failure so to amend does not affect the result of the trial of these issues." Clearly, Hill's counsel should have added a contract claim by amendment. But "[i]f an amendment to conform the pleadings to the proof should have been made, an appellate court will·presume that it was so made." *Electrical Advertising, Inc. v. Sakato,* 94 Ariz. 68, 71, 381 P.2d 755, 757 (1963); *Johnson v. Mateer,* 625 F.2d 240, 242 (9th Cir.1980) (where an affidavit opposing a summary judgment motion clarifies a complaint's vague allegations, courts should construe that affidavit as a Rule 15(b) request to amend pleadings); *see also* 3 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 15.13[2] (2d ed. 1989) ("It should be noted that Rule 15(b) is not permissive in its terms: it provides that issues tried by express or implied consent *shall* be treated as if raised in the pleadings.").

Thus, on this record, and particularly in light of the court of appeals' opinion and Chubb Life's failure to argue otherwise in the court of appeals or this court, we hold

---

legal obligation to do so, since there was no consideration paid to Chubb." · Opening Brief at 15 (emphasis added). Chubb made similar argu-

ments before this court. Response to Petition for Review, at 12.

that contract liability is properly at issue in these summary judgment proceedings. We turn, therefore, to the court of appeals' contract analysis of the sixty-day clause.

### B. The Effect of the Sixty–Day Clause

■ The application agreement said that the "[applicant] will be informed if the application has been accepted within 60 days or be given the reason for the delay." The court of appeals majority held that without a premium payment in consideration, this clause was "nothing more than a gratuitous promise by Chubb Life." *Hill,* 178 Ariz. at 43 n. 3, 870 P.2d at 1139 n. 3. The court rejected detrimental reliance as substitute consideration because any inducement upon which Hill might have relied came from Sroka, whom the court of appeals erroneously believed was Hill's agent.[9] *Id.*

We disagree with this assessment of the application agreement. Chubb Life argues that an insurance application is normally just an offer to purchase insurance, which the insurance company is free to accept, reject, or ignore unless it receives a premium. We need not consider this argument here, however, because this is not an ordinary insurance application; the express sixty-day clause changes the equation. Chubb affirmatively promised to accept or reject the application within sixty days or tell the applicant why it would take longer. Chubb has its reasons for this promise, and it is obvious that such a promise by a disability carrier could be an important factor to the consumer. *See 12A Appleman* § 7237.

■ Nor can we say this was merely a gratuitous promise. We interpret insurance agreements "in light of controlling contract law or ... statutes," *Insurance Co. of N. Am.,* 166 Ariz. at 85, 800 P.2d at 588, under which there is a presumption that written promises are supported by consideration. A.R.S. § 44–121; *Dunlap v. Fort Mohave*

*Farms Inc.,* 89 Ariz. 387, 393, 363 P.2d 194, 198 (1961). Consideration for a promise does not have to be monetary. *Carroll v. Lee,* 148 Ariz. 10, 13, 712 P.2d 923, 926 (1986). Rather, "any benefit to the promisor or detriment to the promisee is sufficient." *USLife Title Co. v. Gutkin,* 152 Ariz. 349, 354, 732 P.2d 579, 584 (App.1986). And there is, of course, no contrary rule for promises related to insurance agreements. Thus, for example, consideration other than a premium can support a contract for temporary insurance. *Statewide Ins. Corp. v. Dewar,* 143 Ariz. 553, 556, 694 P.2d 1167, 1170 (1984); *George J. Couch, Cyclopedia of Insurance Law* § 14:29 (Rev.2d ed. 1984). Moreover, and significantly here, any challenge to the adequacy of consideration is a *fact* question. *USLife Title,* 152 Ariz. at 356, 732 P.2d at 586; *Dunlap,* 89 Ariz. at 393, 363 P.2d at 198; *see also Recommended Arizona Jury Instructions (Civil) 2d,* Contract 7 (1991 & Supp.1994).

The record here contains ample evidence of detriment to Hill, the promisee of the written sixty-day clause. He completed the application and submitted it. He revealed detailed financial information to Chubb at Chubb's request. He underwent a physical examination and electrocardiogram and gave blood and urine samples. Additionally, he completed two supplemental forms at Chubb's request. *See Peddicord,* 498 P.2d at 1390 (finding "that the consideration for said contract [to timely process an application] was the making of the application ... [and] the submission by the applicant at the request of the agent to [a medical] examination."). This is more than sufficient to create a genuine issue of material fact on the question of consideration.[10] *Nelson v. Phoenix Resort Corp.,* 181 Ariz. 188, 196, 888 P.2d 1375, 1383 (App.1994) (reversing summary judgment on contract claims because record showed material fact issues); *see generally*

9. *See supra* n. 1.

10. Because we find evidence of consideration, we do not reach Hill's detrimental reliance or forbearance argument. We note, however, that the court of appeals misconstrued the record in rejecting it. Chubb Life apparently persuaded the court that Sroka was acting not as its agent, but as Hill's. Thus, Chubb argued, Sroka's assurances that the coverage would be placed were not attributable to Chubb Life. Chubb renewed that argument in this court. But as noted, the record belies it. In its answer, Chubb Life "admit[ted the factual allegation] that the Srokas were [its] agents." Answer [to Complaint] at 1.

Arthur L. Corbin, Corbin on Contracts § 127 (2d ed. 1961 & Supp.1994) (noting that courts normally do not question the adequacy of consideration).

Chubb nonetheless argues that summary judgment was proper because it satisfied the sixty-day clause by asking Hill to complete the hazardous activity form. This lone fact, according to Chubb, undisputedly shows that Hill knew the insurance would not be placed within sixty days and that he knew the reason for the delay. In contrast, Hill argues that Chubb never said that the hazardous activity supplement would delay the application. Nor was he told of what he claims was the real reason for the delay—the holdup with the second medical records, which he says he might have been able to remedy had Chubb told him about it.

Whatever the merits of these arguments, it is certainly not the case "that reasonable people could not agree with the conclusion advanced by" Hill. *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Thus, summary judgment was improper on the issues of whether Chubb Life owed and breached a contractual duty to underwrite the application within sixty days or to explain any delay.[11]

## DISPOSITION

Although Hill did not state a contract claim in his complaint, contractual liability based on the insurance agreement's sixty-day clause was at issue in the trial court and the court of appeals. Because the parties and the courts below both reached the merits of this issue, and because the question of contract liability was directly presented in the petition for review, review by this court is proper.

Genuine issues of material fact preclude summary judgment. Hill is entitled to a factual determination whether the sixty-day clause created enforceable contractual duties and whether Chubb Life complied with such duties. We vacate the court of appeals' opinion, reverse the trial court's grant of summary judgment, and remand this case for further proceedings consistent with this opinion.

MOELLER, V.C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.

---

**11.** We also granted review on the interesting question whether an insurer can have a tort duty to process an application submitted without a premium. As noted, the court of appeals rejected such a duty. Both the court of appeals and Chubb emphasized that no court has ever recognized a tort or contract duty to timely process an application absent a premium. They apparently overlooked *State Farm Life Ins. Co. v. Bass,* 605 So.2d 908, 910 (Fla.App.1992) ("An insurer who undertakes to obtain an insurance policy owes the proposed insured a duty to act within a reasonable time, *regardless if a premium was tendered by the proposed insured.*") (emphasis added). But because we believe that this appeal is best resolved on the contract theory, we do not decide or further consider this issue here. *See Progressive Specialty Ins. v. Farmers Ins. Co.,* 143 Ariz. 547, 548, 694 P.2d 835, 836 (App.1985).